09-2988-cr
United States v. DeSilva

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2009

(Argued June 23, 2010                                    Decided July 28, 2010)

Docket No. 09-2988-cr

UNITED STATES OF AMERICA,

*Appellant*,

v.

CHAD EDWARD DESILVA,

*Defendant-Appellee.*

Before WINTER, CABRANES, and WESLEY, *Circuit Judges.*

The government brings this appeal of a sentence imposed by a June 10, 2009 judgment of conviction entered in the United States District Court for the Western District of New York. We hold that the District Court committed procedural error by engaging in clearly erroneous fact-finding at defendant's sentencing when it relied upon a psychologist's report—which was prepared for use at a pretrial bail hearing—to find that defendant, an admitted child molester, posed no danger to the community.

Vacated and remanded.

<div style="margin-left:40%">

JOSEPH J. KARASZEWSKI, Assistant United States Attorney (Kathleen M. Mehltretter, United States Attorney, *on the brief*), Office of the United States Attorney for the Western District of New York, Buffalo, New York, *for appellant.*

SEAN DENNIS HILL, Buffalo, New York, *for appellee.*

</div>

PER CURIAM:

We are called upon here to determine whether the United States District Court for the Western District of New York committed procedural error by engaging in clearly erroneous fact-finding at defendant's sentencing when it relied upon a psychologist's report—which was prepared for use at a pretrial bail hearing—to find that defendant, an admitted child molester, posed no danger to the community. We hold that the District Court did commit such procedural error and therefore remand for resentencing.

**BACKGROUND**

In September 2006, defendant-appellee Chad Edward DeSilva traded child pornography on the internet with a Task Force Agent of the Federal Bureau of Investigation. After obtaining a warrant, federal investigators searched DeSilva's Buffalo home and found a computer hard drive containing pictures of naked prepubescent boys engaging in sex acts. DeSilva admitted to the investigators that the pictures were his; he had obtained them, he said, on the internet.

DeSilva then came under the scrutiny of two local police departments. After an investigation, DeSilva admitted to local detectives that he had sexually abused a friend's son over a period of two years. DeSilva explained that he had often "babysat" the boy—who was, when the abuse began, approximately eleven years old—and in that position of trust, he had repeatedly exposed the boy to pornography and encouraged the boy to masturbate with him. Eventually, DeSilva admitted, the abuse escalated: he touched the boy's penis, manually stimulated him, and performed oral sex on him.

DeSilva was taken into custody by federal officials and later indicted on federal child pornography charges. DeSilva requested release on bail pending trial and, in support of that request, submitted a report of a psychologist he had hired, Dr. Brian S. Joseph ("Dr. Joseph"). In his report,

2

Dr. Joseph acknowledged that DeSilva had "clearly demonstrated interest in Pedophilic sexual stimulation," but he observed that DeSilva had "expressed what seemed to [him] to be genuine remorse at th[at] time." J.A. 95. Dr. Joseph argued that DeSilva should be released to his parents pending trial. He reasoned as follows:

> I feel that if [DeSilva] were to be released to his parents, he would not present a danger to the community. Not only because he states emphatically that he would resist such impulses to do so [(*i.e.*, to engage in "Pedophilic sexual stimulation")], but he would have little opportunity to do [so] and would be closely monitored by his parents, as well. It is important to note that he did *not* molest anyone else, save the neighbor's son, i.e. he did not go into the community to select victims at random, or others in his family or broader sphere of acquaintances who might serve as targets.

> In addition, the parents have assured me that the computers have been removed from the home and they have no Internet access. Again, his family is more than willing to be involved and provide careful supervision. Of course, while I only have his own pledges that he would refrain from any further illegal activity, he seemed earnest and forthright in that regard.

> Again, I feel that he is well motivated and he, himself, is interested to enter counseling at the first opportunity. He seems to have developed clearer self-awareness that child pornography involves victimization and exploitation of children, and that his sexual gratification is obviously a secondary issue. Thus, again, I do not feel that he poses a danger to the community at large and at this point in time, a release to his parents' custody is a reasonable alternative to continued incarceration.

J.A. 95-96. As to a possible *sentence* for DeSilva, Dr. Joseph expressed only "hope[]" that "the Court would view" the information in his report "in a positive light as [the Court] consider[ed] sentencing alternatives." *Id.* at 96. DeSilva was not granted pre-trial release.[1]

---

[1] The government informs us—and DeSilva does not dispute—that DeSilva's bail request was adjudicated in the following manner:

> The district court granted the government's detention motion at the time of DeSilva's initial appearance on the criminal complaint. DeSilva thereafter moved for reconsideration, which motion was fully briefed and argued before the magistrate judge. The magistrate judge reserved decision on July 6, 2007, but apparently never decided the motion.

3

DeSilva eventually pleaded guilty under a plea agreement with the government to one count of distributing child pornography. *See* 18 U.S.C. § 2252(a)(2). The plea agreement provided that DeSilva's offense level under the United States Sentencing Guidelines (U.S.S.G.) would be 38. That calculation included a five-level enhancement based on DeSilva's ongoing sexual abuse of his friend's son. *See* U.S.S.G. § 2G2.2(b)(5) ("If the defendant engaged in a pattern of activity involving the sexual abuse . . . of a minor, increase [the offense level] by 5 levels."). Placing DeSilva within criminal history level I, the plea agreement concluded that his advisory sentence range would be 235 to 240 months' imprisonment.[2]

At sentencing, DeSilva's counsel argued for a sentence "at, or slightly in excess of," the statutory minimum, 60 months. *See* 18 U.S.C. § 2252(b)(1). He submitted several letters written in support of DeSilva, and he once again submitted the report of Dr. Joseph that had been prepared in support of the request for pre-trial release. The government argued for a sentence within the advisory Guidelines range, and written victim impact statements were submitted by DeSilva's minor victim, members of the victim's family, and a psychologist who had treated the victim. The victim stated poignantly: "I don't want what happened to me to ever happen to anyone else."

---

Appellant's Br. 5 n.2 (citations omitted). We are troubled by the suggestion that the magistrate judge failed to decide DeSilva's request for pretrial release, as a court should act expeditiously in ruling on requests that involve a defendant's liberty. That fact, however, does not affect the merits of this appeal. DeSilva does not appeal the denial of pre-trail release; this appeal is brought by the government, and no cross-appeal has been filed by DeSilva. Thus we are called upon here to review only the District Court's sentencing of DeSilva.

[2] The top of the advisory Guidelines range, 240 months, represented the statutory maximum term of imprisonment. *See* 18 U.S.C. § 2252(b)(1) (providing that the statutory maximum is "20 years"); U.S.S.G. § 5G1.1(c) (providing that a sentence may not be imposed that is "greater than the statutorily authorized maximum sentence"); *id.* § 5G1.1 cmt. ("For example, . . . [i]f the applicable guideline range is 51-63 months and the maximum sentence authorized by statute for the offense of conviction is 60 months, the guideline range is restricted to 51-60 months under subsection (c).").

The District Court first calculated the advisory Guidelines range as provided in the plea agreement: an offense level of 38 and a criminal history category of I, resulting in a range of 235 to 240 months' imprisonment. The Court then explained that it had decided to impose a below-Guidelines sentence. It listed several reasons for its decision to deviate from the Guidelines; one of those reasons was "Dr. Joseph's opinion that you [(*i.e.*, DeSilva)] are not a danger to the community." *See* J.A. 168-69. The Court's written statement of reasons provided as follows (emphasis added):

> The Court rendered a full decision from the bench. In sum and substance, the Court considered that although defendant's sentencing colloquy was more of an apology to his family and friends than an acknowledgment of the harm he caused, his past abuse [(*i.e.*, the abuse that DeSilva had suffered in the past)], lack of prior criminal record, employment history, support from family and friends, *and Dr. Joseph's opinion that the defendant is not a danger to the community* supports the downward variance to a reasonable sentence.

The Court imposed a sentence of 132 months' imprisonment and a lifetime term of supervised release.

The government, acting with the approval of the Solicitor General of the United States, brought this timely appeal.[3]

---

[3] *See* 18 U.S.C. § 3742(b)(3) ("The Government may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence . . . is less than the sentence specified in the applicable guideline range to the extent that the sentence includes a lesser . . . term of imprisonment . . . than the minimum established in the guideline range . . . ."); *id.* § 3742(b) ("The Government may not further prosecute such appeal without the personal approval of the Attorney General, the Solicitor General, or a deputy solicitor general designated by the Solicitor General.")

**DISCUSSION**

We review a criminal sentence for "'unreasonableness,'" which means that we apply a "deferential abuse-of-discretion standard." *United States v. Cavera*, 550 F.3d 180, 187, 189 (2d Cir. 2008) (*en banc*) (quoting *United States v. Booker*, 543 U.S. 220, 245 (2005)); *Gall v. United States*, 552 U.S. 38, 40 (2007)). "Our review has two components: procedural review and substantive review." *Dorvee*, 604 F.3d at 90 (citing *Cavera*, 550 F.3d at 189). "'Procedural error'" includes, among other things, "'selecting a sentence based on clearly erroneous facts.'" *Id.* (quoting *Gall*, 552 U.S. at 51). To hold that a factual finding is "clearly erroneous," we must be "'left with the definite and firm conviction that a mistake has been committed.'" *Cavera*, 550 F.3d at 204 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

Federal criminal sentences are also subject to review for substantive reasonableness. Although substantive reasonableness is judged under the same deferential abuse-of-discretion standard, we have recently cautioned that "the 'eccentric' child pornography Guidelines, with their 'highly unusual provenance,' 'can easily generate unreasonable results' if they are not 'carefully applied.'" *United States v. Tutty*, ___ F.3d ___, No. 09-2705-cr, 2010 WL 2794601, at *5 (2d Cir. July 16, 2010) (quoting *Dorvee*, 604 F.3d at 95).

The government contends that the District Court committed clear error when it relied on Dr. Joseph's report to find that DeSilva was "not a danger to the community." J.A. 168. The report, the government argues, dealt only with whether DeSilva would be a danger to the community if he were to be released to his parents pending trial. *See* Appellant's Br. 17. In the government's view, therefore, the District Court's reliance on Dr. Joseph's report "was clearly erroneous insofar as it entirely removed Dr. Joseph's opinion from the context in which it was rendered." *Id.*

6

We agree.

Although a psychologist's report may provide mitigating evidence for the court's consideration during sentencing, the court must still conduct an independent evaluation of the defendant in light of the factors set forth in 18 U.S.C. § 3553(a). If the psychologist's report cannot be squared with the court's own judgment of the defendant's culpability and the danger he poses to society, the court is free, in its discretion, to decline to rely on the psychologist's findings, so long as the court explains its basis for doing so.

Nothing in *Dorvee* is to the contrary. There, as part of our consideration of a sentence's substantive reasonableness, we observed that the district court placed more emphasis on 18 U.S.C. § 3553(a)(2)(C)[4] as an aggravating factor than the sentencing record could support. *See Dorvee*, 604 F.3d at 94. Specifically, the district court in *Dorvee* based the defendant's sentence, at least in part, on the "assumption" that the defendant posed a danger to the community merely because he had committed a child-pornography offense. *Id.* In relying on that "assumption"—which, we found, lacked record support—the district court also ignored, without explanation, a psychologist's report that tended to suggest that there was *not* a great need "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). The fact that the record as a whole could not sustain the district court's application of § 3553(a)(2)(C) supported our ultimate conclusion that the sentence was not substantively reasonable. *See Dorvee*, 604 F.3d at 94. We did not, however, suggest that a district court must, without scrutiny, adopt a psychologist's conclusion that a particular defendant poses no danger to the community.

---

[4] This subsection provides in relevant part: "The court, in determining the particular sentence to be imposed, shall consider . . . the need for the sentence imposed . . . to protect the public from further crimes of the defendant . . . ." 18 U.S.C. § 3553(a)(2)(C).

7

In short, nothing in *Dorvee* compels a district court to accept a psychologist's conclusions at face value. It is possible, of course, that such a psychologist's report may be accurate. But district courts should scrutinize such reports with the same diligence required during any fact-finding at sentencing, especially if the report's conclusion is at odds with the defendant's conduct.

Here, unlike the report in *Dorvee*, Dr. Joseph's report focused on whether DeSilva could be released on bail to his parents pending trial. Each time Dr. Joseph opined that DeSilva was not a danger to the community, the opinion was conditioned on the premise that DeSilva would be released to his parents. *See* J.A. 95 ("I feel that *if [DeSilva] were to be released to his parents*, he would not present a danger to the community." (emphasis added)); *id.* at 96 ("I do not feel that he poses a danger to the community at large and *at this point in time, a release to his parents' custody is a reasonable alternative to continued incarceration.*" (emphasis added)). Indeed, in concluding that DeSilva was unlikely to molest another boy, Dr. Joseph reasoned that "he would have little opportunity to do [so]" because he "would be closely monitored by his parents." J.A. 95; *see also id.* at 96 ("In addition the parents have assured me that the computers have been removed from the home and they have no Internet access. Again, his family is more than willing to be involved and provide careful supervision.").

As a result, we are "'left with the definite and firm conviction'" that the District Court made a "'mistake'" in relying on Dr. Joseph's report at sentencing to conclude that DeSilva posed no threat to the community. *Cavera*, 550 F.3d at 204 (quoting *Anderson*, 470 U.S. at 574). Dr. Joseph's report dealt only with whether DeSilva would be a danger to the community if released to his parents pending trial. What was relevant for *sentencing*, however, was whether DeSilva would pose a danger to society once he had served his sentence and was released from prison. No one suggests that the District Court could have ordered that DeSilva be released to his parents following his term

8

of imprisonment, and thus Dr. Joseph's opinion had only minimal relevance to whether DeSilva would be likely to abuse another boy after his sentence was complete. As such, the report should have had little bearing on the District Court's sentencing determination; it was not, in any event, an appropriate authority for the Court's finding that DeSilva posed no "danger to the community." *See* J.A. 168-69. In relying on Dr. Joseph's report, therefore, the District Court "'select[ed] a sentence based on [a] clearly erroneous fact[]'" and thereby committed "'procedural error.'" *Dorvee*, 604 F.3d at 90 (quoting *Gall*, 552 U.S. at 51).

We accordingly vacate the sentence imposed by the District Court and remand for resentencing so that the Court can "correct its mistake." *Cavera*, 550 F.3d at 190; *see also Tutty*, 2010 WL 2794601, at *3. We are, of course, empowered to address "both the procedural and substantive reasonableness of [a] sentence in the course of an appeal where we find both types of error." *Dorvee*, 604 F.3d at 93. Here, however, the government has not challenged the substantive reasonableness of DeSilva's sentence, and thus we decline to decide whether the sentence imposed was substantively reasonable. That is, we intimate no view as to whether a 132-month sentence in this case was "manifestly unjust[,] . . . shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009); *accord Dorvee*, 604 F.3d at 94. We hold only that the procedure used to arrive at that sentence was erroneous, and a new full sentencing hearing is required for the District Court to "exercise its discretion anew." *Cavera*, 550 F.3d at 190.

## CONCLUSION

For the reasons set forth above, we hold that the District Court committed procedural error by engaging in clearly erroneous fact-finding at defendant's sentencing when it relied upon Dr. Joseph's report to conclude that DeSilva posed no danger to the community. We therefore **VACATE** the sentence imposed and **REMAND** the cause to the District Court for resentencing.