10-2050-cr(L)
United States v. Figueroa

### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

August Term 2010

(Submitted: May 19, 2011                          Decided: May 26, 2011)

Docket Nos. 10-2050-cr(L); 10-2051-cr(CON)

UNITED STATES OF AMERICA,

*Appellee*,

-v.-

BAYRON DAVID FIGUEROA, a.k.a David Bayron Figueroa,
JONATHAN ACEBEDO-GARCIA,

*Defendants-Appellants*,

FABIAN ENRIQUE ALVARADO-AYALA, a.k.a Fabian Alvarado,

*Defendant.*

Before: MINER, CABRANES, and STRAUB, *Circuit Judges.*

———————————

  Bayron David Figueroa and Jonathan Acebedo-Garcia appeal from May 17, 2010 judgments of conviction entered by the United States District Court for the Northern District of New York (Glenn T. Suddaby, *Judge*), for possession with intent to distribute a mixture of 3, 4-Methylenedioxymethamphetamine ("MDMA"), methamphetamine, and N-Benzylpiperazine ("BZP")—all Schedule I controlled substances—in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 21 U.S.C. § 846. We hold that there is insufficient evidence in the record to conclude, pursuant to United States Sentencing Guidelines § 2D1.1, that the appropriate substitute for the mixture contained in the pills found in defendants' possession is MDMA. In a non-precedential order filed simultaneously herewith we affirm the order of the District Court denying defendants' motion to suppress and its judgments of conviction, but we now remand the cause to the District Court with instructions to conduct an evidentiary hearing to determine the composition of the pills for the purposes of U.S.S.G. § 2D1.1.

Timothy Austin, Assistant Federal Public Defender (Molly Corbett, on the brief), *for* Alexander Bunin, Federal Public Defender for the Northern District of New York, Albany, NY, *for Defendant-Appellant Bayron David Figueroa.*

Brendan White, White & White, New York, NY, *for Defendant-Appellant Jonathan Acebedo-Garcia.*

Rajit S. Dosanjh, Assistant United States Attorney (Daniel C. Gardner, Assistant United States Attorney, *on the brief*), *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee United States of America.*

JOSÉ A. CABRANES, *Circuit Judge*:

The question presented is whether the District Court engaged in clearly erroneous fact-finding that led to a procedurally unreasonable sentence when it determined that the controlled substance referenced in the United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") that is most closely related to the mixture found in defendants' possession—which included N-Benzylpiperazine ("BZP") and trace amounts of methamphetamine, 3, 4-Methylenedioxymethamphetamine ("MDMA"), caffeine, procaine, and 3–Trifluoromethylphenylpiperazine ("TFMPP")—is MDMA, or "ecstasy."

Defendants-appellants Bayron David Figueroa and Jonathan Acebedo-Garcia appeal from May 17, 2010 judgments of conviction entered by the United States District Court for the Northern District of New York (Glenn T. Suddaby, *Judge*).[1]  In a non-precedential order filed simultaneously herewith we affirm the orders of the District Court denying defendants' motions to suppress and affirm the District Court's judgments of conviction.  In this opinion, we now also hold that there is insufficient evidence in the record to conclude that

---

[1] On appeal, Acebedo-Garcia incorporates by reference Figueroa's challenge to the reasonableness of the sentence imposed by the District Court. **[JAG 21]** We therefore focus on Figueroa's proceedings and record on appeal, while noting that Acebedo-Garcia's proceedings were substantially identical for the purposes of our review.

the appropriate substitute under the Sentencing Guidelines for the mixture contained in the pills found in defendants' possession is MDMA. The cause is therefore remanded with instructions to conduct an evidentiary hearing to determine the composition of the pills for the purposes of U.S.S.G. § 2D1.1.

## BACKGROUND

In February 2009, approximately 23,000 blue and white pills were found in defendants' possession during the search of their vehicle following a traffic stop in upstate New York. The pills, which tested positive for characteristics of ecstasy in the field, were later verified at a Drug Enforcement Administration ("DEA") laboratory to be comprised of BZP, along with "unmeasurable" amounts of methamphetamine, MDMA, caffeine, procaine, and TFMPP. A small fraction of the pills contained only BZP and "unmeasurable" amounts of MDMA and caffeine. In January 2010, after the District Court denied defendants' motions to suppress evidence—including the pills—obtained during the search of their vehicle, defendants pleaded guilty to possession with intent to distribute a mixture of MDMA, methamphetamine, and BZP in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 21 U.S.C. § 846.

Because BZP is a "controlled substance that is not specifically referenced" in the Guidelines, the United States Probation Office ("Probation Office") calculated defendants' base offense level by using the "the marihuana equivalency of the most closely related controlled substance referenced in" the Sentencing Guidelines. U.S.S.G. § 2D1.1, cmt. n.5. After concluding that "BZP is designed to mimic the psychoactive effects of MDMA," the Probation Office recommended, in its Presentence Investigation Report ("PSR") for each of the defendants whose appeal is now before us, a base offense level using the marijuana equivalency for MDMA under § 2D1.1.

At sentencing, the parties disputed whether the appropriate substitute under

3

§ 2D1.1 for the mixture found in defendants' possession is MDMA. The government argued that

> the chemical possessed by the Defendant (BZP mixed with [TFMPP]) is most closely related to MDMA because it has a substantially similar effect on the central nervous system. According to the Drug Enforcement Administration (DEA) Forensic Laboratory in New York City, BZP is mixed with TFMPP for the specific purpose of mimicking the effects of MDMA. While BZP by itself is not necessarily sufficient, the mixture of the two chemicals together causes an effect on the central nervous system similar to MDMA. TFMPP slows the metabolization of BZP causing the effects of BZP to be more potent and last longer. According to the DEA, the BZP/TFMPP is being sold by drug traffickers as MDMA at the same price and by the same name, "ecstasy."

*Rebuttal Sentencing Memo. of the United States* 2 (May 13, 2010). Figueroa, in turn, argued, *see* note 1 *ante*, that the "the only measurable controlled substance in the pills was [BZP]," and that because the government had conceded that BZP by itself is not necessarily sufficient to cause an effect on the central nervous system similar to MDMA, the government had failed to meet its burden of establishing that MDMA is the correct substitute for BZP under the Guidelines. *Sentencing Memo. in Reply to the Government's Rebuttal Sentencing Memo.* 2 (May 14, 2010). Figueroa also requested an evidentiary hearing to evaluate the underlying information in the DEA laboratory report and specifically to consider whether BZP alone or with trace quantities of other drugs—as opposed to the combination of BZP and TFMPP—should be treated as MDMA for the purposes of determining the most closely related substance under the Guidelines. Transcript of Sentencing Proceeding at 13-14, *United States v. Figueroa*, 09–cr–145 (N.D.N.Y. May, 21 2010).

The District Court concluded that no evidentiary hearing was necessary to credit the DEA lab reports. *Id.* Moreover, the District Court observed that the fact that BZP and MDMA are "treated as interchangeable drugs" on "the street" was a sufficient basis upon which to conclude that the Probation Office's calculation was appropriate for BZP in the

absence of TFMPP. Accordingly, the District Court denied Figueroa's request for an evidentiary hearing and sentenced him principally to a term of imprisonment of 63 months, which was within the Guidelines range.[2] Figueroa filed a timely notice of appeal.

On appeal, defendants argue that the District Court engaged in clearly erroneous fact-finding that led to a procedurally unreasonable sentence when it determined that the controlled substance referenced in the Sentencing Guidelines most closely related to the mixture found in the pills in defendants' van is MDMA, also known as ecstasy.

## DISCUSSION

We review a criminal sentence for "unreasonableness," which "amounts to review for abuse of discretion." *United States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008) (in banc) (quotation marks omitted); *see also Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining "abuse of discretion"). "Reasonableness review requires an examination of the length of the sentence (substantive reasonableness) as well as the procedure employed in arriving at the sentence (procedural reasonableness)." *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009). "Procedural error includes, among other things, selecting a sentence based on clearly erroneous facts." *United States v. DeSilva*, 613 F.3d 352, 356 (2d Cir. 2010) (quotation marks omitted).

As we recently held in *United States v. Chowdhury*, a determination by a district court that the combination of BZP and TFMPP is most closely related to MDMA for the purposes of determining the appropriate marijuana equivalency under U.S.S.G. § 2D1.1 is not clearly erroneous. --- F.3d ---, No. 09-3442-cr, 2011 WL 590260, at *3 (2d Cir. Feb. 22, 2011). However, as the government recognized in its sentencing memorandum in this case before the District Court, the holding in *Chowdhury* was premised on the fact that BZP—

---

2 Acebedo-Garcia was sentenced principally to a term of imprisonment of 51 months, which was within the Sentencing Guidelines range.

5

when combined with TFMPP—is most closely related to MDMA in light of the three-factor inquiry prescribed by § 2D1.1, cmt. n.5. *Id.* at *2 (noting, among other things, that the combination of BZP and TFMPP is sold on the street as MDMA because those substances, when combined, "mimic[ ] the effects of MDMA on the central nervous system" (quotation marks and alteration omitted)). *Chowdhury*, on the other hand, does not stand for the proposition that MDMA is the proper substitute for BZP alone. *See id.* at *3 ("[T]he substance in Chowdhury's possession was not BZP alone, but a combination of BZP–TFMPP that 'is sold as MDMA, promoted as an alternative to MDMA and is targeted to the youth population.'" (quoting Schedules of Controlled Substances, 69 Fed. Reg. 12794–01, 12795 (Mar. 18, 2004))). Indeed, *United States v. Beckley*, 715 F. Supp. 2d 743, 748 (E.D. Mich. 2010), and *United States v. Rose*, 722 F. Supp. 2d 1286, 1289 (M.D. Ala. 2010)—both of which we cited in *Chowdhury*—state that the substance most closely related to BZP in isolation is amphetamine, not MDMA. *See Chowdhury*, 2011 WL 590260, at *3.

Here, unlike in *Chowdhury*, the record on appeal does not allow us to conclude that the pills found in defendants' van were a mixture of BZP and TFMPP containing a similar chemical structure to MDMA, designed to mimic the effects of MDMA, or containing a similar potency to MDMA. *See* U.S.S.G. § 2D1.1, cmt. n.5 (reviewing the factors the court must take into account to the extent practical in determining the most closely related substance under the Guidelines). Instead, the record appears to indicate that the substance was almost exclusively composed of BZP, with "unmeasurable" amounts of caffeine, methamphetamine, procaine, TFMPP, and MDMA itself. Indeed, the PSR prepared by the Probation Office, which the District Court adopted for purposes of sentencing, did not reference TFMPP as one of the substances in the mixture found in defendants' possession, despite the fact that it was documented as occurring in "unmeasurable" quantities in the lab tests conducted by the DEA. In that context, the District Court's reliance on the fact that

6

BZP and MDMA are "interchangeable" on "the street" is insufficient to justify the conclusion that MDMA is the appropriate substitute for BZP alone or with trace quantities of other substances pursuant to § 2D1.1.

Although we certainly do not foreclose the determination that MDMA is the appropriate substitute for BZP alone, in the absence of an evidentiary hearing to determine the nature of the mixture, its chemical structure, and its intended neurological effects, the record on appeal does not permit us to determine whether the proper substitute is amphetamine (as *Rose* and *Berkley* might suggest), MDMA, or another substance on the Drug Equivalency Table, U.S.S.G. § 2D1.1, tbl. D. Accordingly, the best course of action is to remand to the District Court for an evidentiary hearing to determine the most closely related substance referenced in the Guidelines, pursuant to the criteria established under § 2D1.1, cmt. n.5. Furthermore, inasmuch as the parties inform us that the use of BZP, alone and in combination with other substances, to mimic the effects of other narcotics is increasingly prominent in certain parts of this Circuit, we direct the Clerk of the Court to forward a certified copy of this opinion to the Chairperson and Chief Counsel of the United States Sentencing Commission for whatever consideration they may deem appropriate. *See United States v. Lenoci*, 377 F.3d 246, 259 (2d Cir. 2004).

Finally, we pause to note that defendants' success on their sentencing claims may ultimately prove to be a Pyrrhic victory. As sometimes occurs in the era of the Sentencing Guidelines, defendants who appeal their sentences may face the possibility of a harsher punishment on remand. *See, e.g., United States v. Bryce*, 287 F.3d 249, 254–55 (2d Cir. 2002) (holding that imposition of a higher sentence after an appeal does not violate the Double Jeopardy Clause where the defendant had no settled expectation in the finality of the original sentence); *cf. North Carolina v. Pearce*, 395 U.S. 711, 723–25 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989) (holding that imposition of a higher sentence on

7

remand to punish a defendant for pursuing an appeal violates his due process rights).  In this case, for example, challenging the use of MDMA may not inure to defendants' advantage. Under the Drug Equivalency Table, one gram of MDMA is equal to 500 grams of marijuana. 7.2 kilograms of MDMA therefore equals 3,600 kilograms of marijuana, which indicates a base offense level of 34.  U.S.S.G § 2D1.1, tbl. C (Drug Quantity Table) (associating "[a]t least 3,000 KG but less than 10,000 KG of Marijuana" with a base offense level of 34). However, one gram of amphetamine—which may be the appropriate substitute for BZP under § 2D1.1—equals 2 kilograms of marijuana.  7.2 kilograms of amphetamine therefore equals 14,400 kilograms of marijuana, which indicates a base offense level of 36.  *Id.* (associating "[a]t least 10,000 KG but less than 30,000 KG of Marijuana" with a base offense level of 36).[3]

In the normal course, when confronted with the possibility that appellants' "victory" on appeal may actually result in a longer sentence than that initially imposed, we might seek to assure ourselves at oral argument that appellants were aware of those risks and prepared to proceed in any event. *See United States v. Harrington*, 354 F.3d 178, 186 n.5 (2d Cir. 2004). Here, however, because this case was submitted for decision without argument by the parties, we had no opportunity to do so.  In the interest of justice, therefore, and in the exercise of our authority to "require such further proceedings to be had as may be just under the circumstances," 28 U.S.C. § 2106, we will stay our mandate for an additional thirty days beyond the normal interval provided by Federal Rule of Appellate Procedure 41(a)—or beyond the disposition of any timely petitions for rehearing, whichever period is longer—to allow defense counsel to confer with appellants one final time regarding the risks of pursuing their sentencing challenges on appeal.  *See United States v. Palladino*, 347 F.3d 29, 35 (2d Cir.

---

[3] Acebedo-Garcia joins Figueroa's challenge to the sentence imposed by the District Court only insofar as doing so is "beneficial to him."  We intimate no view regarding whether Acebedo-Garcia will have a remedy to avoid a harsher punishment in the event that his sentence on remand is higher than the one originally

2003); *United States v. Bohn*, 959 F.2d 389, 395 (2d Cir. 1992). Appellants shall have the option to withdraw their appeals at any time prior to the issuance of the mandate. *See United States v. Velazquez*, 246 F.3d 204, 217 (2d Cir. 2001) (staying issuance of the mandate for 30 days "to afford the Appellants an opportunity to inform the Clerk within that time whether they wish to withdraw their pending appeals").

## CONCLUSION

In sum:

(1) In a non-precedential order filed simultaneously herewith we affirm the orders of the District Court denying defendants' motions to suppress and affirm the District Court's judgments of conviction.

(2) For the reasons stated above, the sentences of Figueroa and Acebedo-Garcia are remanded to permit the District Court (a) to hold an evidentiary hearing in order to make a determination regarding the appropriate substitute, pursuant to § 2D1.1, cmt. n.5 of the Guidelines, for the mixture found in defendants' possession, and (b) to resentence defendants in accordance with that determination.

(3) The Clerk of the Court is directed to forward a certified copy of this opinion to the Chairperson and Chief Counsel of the United States Sentencing Commission for whatever consideration they may deem appropriate.

(4) The mandate shall be stayed for thirty days, during which time appellants shall have the option to withdraw the instant appeals.

(5) Pursuant to the procedures set forth in *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994), any further appeal by these defendants will be referred to this panel.

---

imposed by the District Court.