**NOT RECOMMENDED FOR PUBLICATION**
File Name: 13a0167n.06

No. 10-1968

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Feb 13, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ARTHUR RAY BECKLEY, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

**BEFORE: BOGGS and WHITE, Circuit Judges, and BERTELSMAN,[*] District Judge.**

**HELENE N. WHITE, Circuit Judge.** Defendant Arthur Beckley pleaded guilty of conspiracy to distribute Benzylpiperazine (BZP), a Schedule I controlled substance. He challenges his sentence as procedurally and substantively unreasonable. Because the record is insufficient to support the district court's determination under U.S.S.G. § 2D1.1 that methylenedioxymethamphetamine (MDMA, commonly known as ecstasy) was the substance most closely related to the pills confiscated from Beckley, we vacate the judgment of sentence and remand for recalculation of the Guidelines range and resentencing.

**I.**

Beckley and Craig Thomas arranged for Shantell Johnson and Albany Cooper to drive to Windsor, Canada, to pick up approximately 5,000 pills of methylenedioxymethamphetamine

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

(MDMA, commonly known as ecstasy). Border agents confiscated the pills Johnson and Cooper were carrying when they attempted to reenter the United States. Johnson and Cooper agreed to cooperate with authorities and participate in a controlled delivery of the pills. Agents arrested Beckley in Detroit when he met the two women. When field-tested, the confiscated pills tested positive for MDMA.

The initial indictment charged Beckley and the three other persons with conspiracy to distribute a detectible quantity of MDMA, a Schedule I controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1). However, after a Drug Enforcement Administration (DEA) laboratory report revealed that the pills did not contain MDMA, but rather BZP and trace amounts of 1-(3-Trifluoromethylphenyl) piperazine (TFMPP) and caffeine, the Government by superseding indictment charged conspiracy to distribute a detectible quantity of BZP, a Schedule I controlled substance.[1] TFMPP is not a controlled substance.

**II.**

At the time of sentencing in July 2010, BZP was not listed in the drug quantity/equivalency tables of the Sentencing Guidelines, U.S.S.G. § 2D1.1(C). Thus, it fell to the district court to "determine the base offense level using the marihuana equivalency of the most closely related controlled substance referenced in this guideline." Section 2D1.1 cmt. n.5.

---

[1]21 C.F.R. § 1308.11(f)(2).

During plea negotiations, the Government contended that MDMA is the most closely related substance to BZP combined with TFMPP. Beckley objected, and successfully petitioned the court for appointment of a forensic-chemistry expert.

Joseph Bono, a forensics professor at Purdue University,[1] opined in a written report that methylphenidate, commonly known as Ritalin, is the most closely related substance to BZP: "the stimulant effects of BZP are similar to but much weaker than amphetamine, and more closely resemble the effects of methylphenidate."

The district court appointed an independent expert, Dr. Laureen Marinetti, Chief Forensic Toxicologist for the Montgomery County Regional Crime Laboratory in Dayton, Ohio, to opine on the controlled substances most closely related to BZP alone, and to BZP combined with TFMPP.

Marinetti prepared a written report and testified at the December 16, 2009, evidentiary hearing that BZP standing alone produces only a stimulant effect on the central nervous system, whereas a combination of BZP and TFMPP produces both stimulant and hallucinogenic effects most similar to the effects of MDMA/ecstasy. Marinetti testified that a 1:1 ratio of BZP to TFMPP was used in the study she reviewed and that ratio produced effects similar to ecstasy. Marinetti also testified that the DEA lab analysis of the drugs in this case did not state the amounts of BZP and TFMPP and that she would have to know the ratio of BZP to TFMPP present in the confiscated pills to determine whether they would produce effects similar to ecstasy. R. 111 at 36-37; PID 952-53.

---

[1]Bono's curriculum vitae states that he holds a B.S. in Chemistry and has decades of experience working for the DEA, including in DEA laboratories. R. 66-3 at 5.

The district court credited Dr. Marinetti and various studies and concluded that MDMA is the most closely related substance to BZP when combined with TFMPP.

Beckley pleaded guilty to the superseding indictment. The PSR[2] relied on the district court's finding that the confiscated pills were most closely related to MDMA, thus yielding a marihuana equivalent of 739.75 kilograms, resulting in a base offense level of 30. After a 3-point reduction for acceptance of responsibility, the total offense level was 27 and the Guidelines range was 78 to 97 months. The district court adopted the PSR's Guidelines calculation and sentenced Beckley to 78 months' imprisonment.

## III.

Beckley asserts that the record evidence before the district court was insufficient to support the determination that MDMA is the most closely related substance to the confiscated pills, and thus that the resulting sentence is procedurally unreasonable.

This court reviews a sentence for procedural and substantive reasonableness under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41, 51 (2007). Procedural errors include improperly calculating the Guidelines range. *Id.* at 51. We review for clear error the district court's factual finding that MDMA is the most closely related controlled substance to the confiscated pills for purposes of computing the Sentencing Guidelines. *United States v. Galloway*, 439 F.3d 320, 322 (6th Cir. 2006).

---

[2]The 2008 edition of the Guidelines Manual was used. PSR at 7, ¶ 20.

**A.**

Section 2D1.1 of the Guidelines, cmt. n.5, provides in pertinent part:

In the case of a controlled substance that is not specifically referenced in this guideline, determine the base offense level using the marihuana equivalency of the most closely related controlled substance referenced in this guideline. In determining the most closely related controlled substance, the court shall, to the extent practicable, consider the following:

(A) Whether the controlled substance not referenced in this guideline has a chemical structure that is substantially similar to a controlled substance referenced in this guideline.

(B) Whether the controlled substance not referenced in this guideline has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance referenced in this guideline.

(C) Whether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled substance referenced in this guideline.

Dr. Marinetti, the court-appointed independent expert, opined with respect to factor (A) that BZP combined with TFMPP does *not* have a *chemical structure* substantially similar to any controlled substance listed in the Guidelines, and with respect to factor (B) that BZP mixed with TFMPP produces a substantially similar stimulant and hallucinogenic effect on the central nervous system to that of MDMA. Regarding factor (C), when asked "would a greater or lesser amount of BZP combined with TFMPP be necessary in order to produce those similar effects [as MDMA] on the central nervous system?" Dr. Marinetti answered: "I did consult the literature again for the

answer to that . . . question. And I did find a study that compared *an equal amount* of BZP and

TFMPP mixed together producing effects similar to MDMA." (emphasis added).

Regarding BZP alone, Dr. Marinetti testified that it has a chemical structure substantially

similar to methamphetamine, produces a substantially similar stimulant effect on the central nervous

system to that of amphetamine, and that ten times more BZP is required to produce the same effect.

Dr. Marinetti testified that the most closely related substance to BZP alone is amphetamine.

**B.**

Defense counsel argued at the evidentiary hearing that Dr. Marinetti acknowledged that she

would need to know the ratio of BZP to TFMPP in the confiscated pills to determine whether their

effect would mimic that of MDMA and that the DEA lab report gave no such indication. The district

court rejected this argument:

> The final § 2D1.1 criteria requires the Court to determine how much of the BZP-
> TFMPP combination is needed to produce a substantially similar effect to a
> controlled substance. Dr. Marinetti opined that, based on her review of the available
> literature, "BZP in combination with TFMPP in a 1:1 ratio is needed to produce a
> substantially similar effect." However, for the reasons that have already been
> expounded above, the Court disagrees with Beckley's contention that it must know
> the ratio before making a finding – under a preponderance of the evidence standard
> – that BZP-TFMPP is substantially similar to MDMA, as opposed to
> methylphenidate as he has advanced. Requiring the Government to set forth the
> precise ratio of BZP to TFMPP in each pill recovered in this case would impose a
> greater evidentiary burden than it must bear, especially when considering all of the
> evidence in its totality. Although § 2D1.1 states that the Court must find the most
> closely related controlled substance, it must be done expeditiously and "to the extent
> practicable." The language of this provision and the applicable evidentiary burden
> suggest that the Court is not required to find a drug that is exactly the same as BZP-
> TFMPP with scientific precision, as Beckley seems to advance here.

R. 78 at 9-10. The court had observed earlier that although there is no controlled substance that has a chemical structure similar to BZP-TFMPP, "other evidence in the record . . . suggests that the post arrest pills (i.e., BZP-TFMPP) had substantially similar effects on the central nervous system upon the user as MDMA." The court observed that Dr. Marinetti's testimony that BZP has a stimulant effect and TFMPP a hallucinogenic effect was substantiated by DEA reports stating that BZP and TFMPP are sold in combination in order to mimic the effects of MDMA. The court also observed that although Beckley urged the court not to consider the intent of his co-defendants, he did not dispute the Government's contention that when entering guilty pleas two of his co-defendants stated that they all believed they were entering into a conspiracy to purchase and distribute ecstasy. R. 78 at 9; PID 547.

## C.

Stated simply, the Government presented no evidence to support a finding that the confiscated pills contained sufficient TFMPP to mimic the effects of MDMA on the central nervous system. As the district court noted, the problem is not that the Government failed to show the *exact* proportions of BZP and TFMPP in the confiscated pills. R.78 at 7-8; PID 538-39. Rather, the problem is that there was *no* evidence to support that there was sufficient TFMPP in the confiscated pills that their effect would mimic MDMA. Nor was it established that when TFMPP is present with BZP, it is always in quantities that approximate a 1:1 ratio.

This procedural error in calculating Beckley's Guidelines range necessitates that we remand to the district court for resentencing.

**D.**

We observe that by way of several supplemental authority letters submitted post-argument,

the parties alerted us to an anticipated amendment of the Guidelines, i.e., the addition of BZP to

§ 2D1.1, and subsequently, to the Sentencing Commission's promulgation of the amendment.

Effective November 1, 2012, the Guidelines Drug Equivalency Tables, § 2D1.1, cmt. 8(D),

were amended to include BZP and a marihuana equivalency of 100 grams per gram of BZP, the same

equivalency advocated below by defense expert Bono.

The Sentencing Commission explained the reasons for the amendment:

> Reason for Amendment: This amendment responds to concerns raised by the Second
> Circuit Court of Appeals and others regarding the sentencing of offenders convicted
> of offenses involving BZP (N-Benzlypiperazine), which is a Schedule I stimulant.
> See United States v. Figueroa, 647 F.3d 466 (2d Cir. 2011). The amendment
> establishes a marijuana equivalency for BZP offenses in the Drug Equivalency Table
> provided in Application Note 10(D) in § 2D1.1 . . . 1 gram of BZP equals 100 grams
> of marijuana.
> . . . .
> The Commission's review of case law and sentencing data indicate that some district
> courts have found that controlled substance most closely related to BZP is
> amphetamine . . . , while other district courts have found that the controlled substance
> most related to BZP is MDMA, but at varying potencies. . . . The different findings
> of which controlled substance is the most closely related to BZP, and the application
> of different potencies of those controlled substances, have resulted in courts imposing
> vastly different sentence lengths for the same conduct.
>
> The Commission reviewed scientific literature and received expert testimony and
> comment relating to BZP and concluded that BZP is a stimulant with pharmacologic
> properties similar to that of amphetamine, but is only one-tenth to one-twentieth as
> potent as amphetamine, depending on the particular user's history of drug abuse.

Accordingly, in order to promote uniformity in sentencing BZP offenders and to reflect the best available scientific evidence, the amendment establishes a marijuana equivalency of 1 gram of BZP equals 100 grams of marijuana. This corresponds to one-twentieth of the marijuana equivalency for amphetamine, which is 1 gram of amphetamine equals 2 kilograms (or 2,000 grams) of marijuana.

http://www.ussc.gov/Legal/Amendments/Official_Text/20120430_Amendments.pdf

In May 2012, after the Sentencing Commission issued the official text of amendment quoted *supra*, but before the amendment went into effect, the Second Circuit issued the most recent circuit decision involving BZP and a determination of its most-closely-related controlled substance, *United States v. David*, 681 F.3d 45 (2d Cir. 2012) (per curiam). Similar to the instant case, the defendant in *David* transported pills across the Canadian border that field-tested positive for MDMA. The defendant pleaded guilty to charges relating to the possession of "substances commonly referred to as ecstasy," including BZP. *Id*. at 47. Apparently the lab report indicating that the pills contained TFMPP and caffeine as well as BZP had not been submitted; thus the proceedings were conducted as though only BZP were at issue. *Id*. As in the instant case, the district court calculated the applicable Guidelines range based on its determination that MDMA most closely resembled BZP, and the defendant challenged that determination on appeal, arguing that his sentence was procedurally unreasonable. *Id*. at 47–48. The lab report was submitted as part of the appeal to the Second Circuit. The Second Circuit remanded for resentencing, discussing several cases that the Sentencing Commission cited in its reasons for the amendment quoted *supra*:

> After David was sentenced, we issued two opinions that control the outcome in this case. In *United States v. Chowdhury*, we held that the district court had not clearly erred in determining that a controlled substance composed of BZP and

TFMPP, which is "'sold as MDMA, promoted as an alternative to MDMA and is targeted to the youth population,'" should be considered most closely related to MDMA for the purpose of U.S.S.G. § 2D1.1. 639 F.3d 583, 587 (2d Cir. 2011). We also determined that, although there was a discrepancy between the controlled substance in connection with which Chowdhury was convicted (BZP alone) and the actual chemical composition of the pills (BZP plus TFMPP), the district court was not required to overlook the presence of TFMPP in its sentencing analysis. *Id*. . . .

Three months later, in *United States v. Figueroa*, we held that the district court had erred when it determined that the most closely related substance to BZP alone was MDMA.[2] 647 F.3d 466 (2d Cir. 2011). We determined that, "unlike in *Chowdhury*, *the record on appeal does not allow us to conclude that the pills found in defendants' van were a mixture of BZP and TFMPP containing a similar chemical structure to MDMA, designed to mimic the effects of MDMA, or containing a similar potency to MDMA*." *Id*. at 470. We therefore held that "the District Court's reliance on the fact that BZP and MDMA are 'interchangeable' on 'the street' is insufficient to justify the conclusion that MDMA is the appropriate substitute for BZP alone *or with trace quantities of other substances* pursuant to § 2D1.1." *Id*.

> Fn2. According to a DEA lab report, the *Figueroa* pills were "almost exclusively composed of BZP, *with 'unmeasurable' amounts* of caffeine, . . . TFMPP, and MDMA itself." *Figueroa*, 647 F.3d at 470.

. . .

Accordingly, we remanded to the district court for an evidentiary hearing *to determine the composition of the pills* and "the most closely related substance referenced in the Guidelines . . . under § 2D1.1, cmt. n.5." *Id.*

Because the District Court did not have the benefit of our decisions in *Chowdhury* and *Figueroa*, . . . [we] remand for resentencing. . . .

Furthermore . . . *[r]ecent proposed amendments to the Sentencing Guidelines indicate that the Commission intends to add a separate marijuana equivalency category for BZP*. The District Court should have the opportunity to determine if the Commission's proposed amendments would affect David's sentence.
. . .

Accordingly, we remand to the District Court to permit it to reevaluate . . . , as appropriate, the nature, chemical structure, and intended neurological effects *of the substance contained in the pills*—and to thereby determine the most closely related substance referenced in the Guidelines and the appropriate marijuana equivalency.
. . .

*David*, 681 F.3d at 48–50 (some citations omitted, footnote omitted, emphasis added).

*David* and *United States v. Figueroa* support the conclusion that unmeasurable or trace amounts of TFMPP in pills containing BZP do not justify a determination that MDMA is the substance most closely related to the pills at issue, and that a sentencing court cannot assume that a pill purported to be MDMA contains BZP and TFMPP in roughly equal proportions. *David*, 681 F.3d at 48–50; *Figueroa*, 647 F.3d 466, 470 (2d Cir. 2011).

**IV**.

Beckley also asserts that since the indictment charged only BZP, the district court could only consider that substance in sentencing:

> Because the additional drug compound TFMPP enhances the potency and therefore potential sentence, it is incumbent upon the Government to plead and or allege that drug in the Indictment. It is a critical fact without which, according to the Court's expert, BZP is merely a stimulant, and nothing more. TFMPP is crucial to making BZP akin to MDMA. If it is that important, then it must be stated and set forth in the indictment based upon the foregoing authority and based upon the basic concepts of due process and notice. Since the indictment makes reference to only BZP, the court should only consider that drug, not any other compounds that were not specifically charged such as TFMPP.

Appellant Br. at 27. Beckley cites several cases decided in the wake of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), which held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" and that "[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. . . . [s]uch facts must be established by proof beyond a reasonable

doubt." (Emphasis added). Beckley relies on *United States v. Strayhorn*, 250 F.3d 462 (6th Cir. 2001), which extended *Apprendi*'s principle to the application of mandatory minimum sentences, and held that the defendant, who had pleaded guilty and whose indictment did not allege the amount of drugs, did not forfeit the right to have the amount of drugs proven beyond reasonable doubt. However, *Strayhorn* and another case Beckley cites, *United States v. Ramirez*, 242 F.3d 348 (6th Cir. 2001), were overruled in pertinent part in *United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002), in which the defendant argued that his sentence violated *Apprendi* because his mandatory minimum sentencing range was determined by an amount of drugs not proven to a jury beyond a reasonable doubt. This court rejected that argument, holding that *Apprendi* extends only to factors that extend sentences beyond the statutory *maximum*. *Id.* at 382–83 (overruling *Ramirez*, *Strayhorn*, and other cases "to the extent they conflict with *Harris* [*v. United States*, 536 U.S. 545 (2002),] and this opinion." (emphasis added)).

Beckley also relies on *United States v. McAuliffe*, which held that an indictment is generally sufficient if it fully, directly, and expressly sets forth all elements necessary to constitute the offense intended to be punished and gives notice to the defendant of the charges he faces. 490 F.3d 526, 530–31 (6th Cir. 2007). But, as the Government argues, judicial fact-finding is appropriate in determining a defendant's sentence, even where those facts are not charged in the indictment, provided that it does not infringe on a defendant's rights by increasing his sentence beyond the statutory maximum. *United States v. White*, 551 F.3d 381, 384-85 (6th Cir. 2008) (en banc). Here, the district court sentenced Beckley to 78 months' imprisonment, well below the 20-year statutory maximum of § 841(b)(1)(c).

For these reasons, we reject Beckley's argument that the district court could consider the substance charged in the indictment.

**V.**

Beckley also asserts that the district court improperly considered the belief of several co-defendants that they were conspiring to deliver MDMA/ecstasy, rendering his sentence substantively unreasonable. A sentence may be substantively unreasonable if based on impermissible factors. *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005). A sentencing court can properly consider the surrounding circumstances, but where there is no evidence that the pills contain sufficient TFMPP to mimic MDMA's effects, the district court cannot base its decision on the participants' beliefs without more. *See Figueroa*, 647 F.3d at 470 (holding that "the District Court's reliance on the fact that BZP and MDMA are 'interchangeable' on 'the street' is insufficient to justify the conclusion that MDMA is the appropriate substitute for BZP alone *or with trace quantities of other substances* pursuant to § 2D1.1." (emphasis added)).

**VI.**

For these reasons, we VACATE the judgment of sentence and REMAND for recalculation of the Guidelines range and resentencing.