**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-50581 |
| Plaintiff - Appellee, | D.C. No. 2:07-cr-00011-MMM-4 |
| v. | |
| MIRNA JEANNETH VASQUE VALENZUELA, AKA Mirriam, AKA Jeanette Vasquez Valenzuela, AKA Mirna Jeanette Vasque Valenzuela, | MEMORANDUM* |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-50582 |
| Plaintiff - Appellee, | D.C. No. 2:07-cr-00011-MMM-7 |
| v. | |
| GABRIEL MENDEZ, | |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 09-50586 |
| Plaintiff - Appellee, | D.C. No. 2:07-cr-00011-MMM-1 |

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

v.

GLADYS VASQUEZ VALENZUELA,

Defendant - Appellant.

UNITED STATES OF AMERICA,                    No. 09-50587

Plaintiff - Appellee,                        D.C. No. 2:07-cr-00011-MMM-8

v.

MARIBEL RODRIGUEZ VASQUEZ,

Defendant - Appellant.

UNITED STATES OF AMERICA,                    No. 09-50611

Plaintiff - Appellee,                        D.C. No. 2:07-cr-00011-MMM-3

v.

MARIA DE LOS ANGELES VICENTE,
AKA Angela,

Defendant - Appellant.

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted October 9, 2012
Pasadena, California

2

Before:    PREGERSON and W. FLETCHER, Circuit Judges, and BENNETT, District Judge.[**]

This appeal is from a month-long sex-trafficking and immigration trial. The jury found all five defendants guilty of conspiracy, sex-trafficking, and transportation of persons for purposes of prostitution. Testimony at trial recounted that appellants and co-conspirators recruited impoverished minors and young women from their home country of Guatemala with promises of well-paying jobs in the United States. A minority of the girls who testified expected to work in prostitution for a brief time to pay off their smuggling debts. Appellants and co-conspirators arranged for the girls' travel and paid the smugglers for the girls upon arrival in the United States. Appellants then forced the girls to work for them as prostitutes, using threats of force and witchcraft against the girls and their families, brutal physical and sexual violence, economic and social dependence, as well as lock and key to keep the girls from running away. After receiving a tip from a driver working for the appellants, the FBI began an investigation ultimately resulting in the arrest of nine co-conspirators. Four reached plea agreements; five went to trial and now appeal both their convictions and sentences. We have jurisdiction pursuant to 18 U.S.C. § 1291 and now affirm.

---

[**]    The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa, sitting by designation.

## I. Rule 412

The district court did not err in excluding evidence and prohibiting cross-examination about victims' possible prior acts of prostitution. We review a district court's interpretation of the Federal Rules of Evidence de novo and evidentiary rulings for abuse of discretion. *United States v. Waters*, 627 F.3d 345, 351-52 (9th Cir. 2010). We review de novo the question whether an evidentiary ruling violates a defendant's constitutional rights. *Id*. We are willing to assume that Federal Rule of Evidence 412 applies to sex trafficking prosecutions. Appellants argue that the district court incorrectly applied the constitutional exception to Rule 412 on the ground that its order prohibiting cross-examination violated the confrontation clause. However, Appellants cannot show the relevance of questions about prior prostitution to either Appellants' knowledge of the use of force, fraud, or coercion, or the victims' consent to work in prostitution. First, 18 U.S.C. § 1591(a), the federal sex trafficking statute under which Appellants were convicted, does not require that Appellants know at the time of recruitment whether force, fraud, or coercion will later be used. They must only know at the time they commit any of the predicate acts—recruiting, enticing, harboring, transporting, providing, obtaining, or maintaining—that force, fraud, or coercion, or threats thereof will be used to cause a person to engage in a commercial sex act. Thus, whether appellants believed the victims were working in prostitution prior to coming to the

4

United States and thus would willingly continue is irrelevant because there is ample evidence that the victims did not continue to work willingly once in the United States while the defendants harbored and maintained them with the knowledge that force, fraud, or coercion would be used to cause the victims to engage in commercial sex.

Second, and for similar reasons, evidence of prior prostitution is irrelevant to whether the victims consented to working as prostitutes. Even if some of the victims consented initially, Appellants violated § 1591 by continuing to harbor and maintain them once Appellants realized that force, fraud, or coercion (or threats thereof) would have to be used to cause the girls to engage in a commercial sex act.

The government's questions about the victims' prior employment and general naivete upon arriving in the United States did not "open the door" because it did not ask about the victims' sexual histories.

## II. *Batson*

The district court did not clearly err in finding that race was not a substantially motivating factor in the government's peremptory strike of a potential juror. On a *Batson* claim, we review the trial court's factual determination concerning discriminatory intent for clear error. *United States v. Steele*, 298 F.3d 906, 910 (9th Cir. 2002).

5

The government provided a race-neutral explanation for its strike of an African-American potential juror, based on her strong views about immigration, and the defense offered no rebuttal. The record as a whole and a comparative juror analysis reveal no reason to doubt the prosecution's explanation. Ultimately, three African-Americans sat on the jury.

## III. Jury Instructions

The district court did not abuse its discretion in formulating the jury instructions to explain the elements of the offense. We review "de novo whether a jury instruction misstates the elements of a statutory crime," but if "the instructions fairly and adequately covered the elements of the offense we review the instruction's precise formulation for abuse of discretion." *United States v. Vallejo*, 237 F.3d 1008, 1024 (9th Cir. 2001) (internal quotations omitted). If the appealing party failed to object below to the jury instructions or withdrew its objection, we review for plain error. *United States v. Brooks*, 508 F.3d 1205, 1208 (9th Cir. 2007) (failure to object); *United States v. Davis*, 36 F.3d 1424, 1431 (9th Cir. 1994) (objection withdrawn). The district court made clear that whatever objections the parties had to the final version of the jury instructions should be stated on the record at the final hearing. All of the defendants' counsel stated that they had no objections to Instruction 23 or 24. Appellants' arguments that

Instructions 23 and 24 shift the jury's focus to force, fraud, and coercion rather than the element of the defendants' knowledge are unconvincing, given that all parties agree that Instruction 20 correctly stated the elements of 28 U.S.C. § 1591(a).

## IV. Sentencing

We review "the district court's interpretation of the Sentencing Guidelines de novo, the district court's application of the Sentencing Guidelines to the facts of [the] case for abuse of discretion, and the district court's factual findings for clear error." *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005). The abuse of discretion standard applies to all final sentencing decisions. *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008). Where a defendant fails to object to a guidelines adjustment at sentencing, we review for plain error. *United States v. Randall,* 162 F.3d 557, 561 (9th Cir. 1998).

### A. U.S.S.G. 2A3.1(b)(2)

The district court did not abuse its discretion in finding that evidence that two victims were between the ages of twelve and sixteen was reliable and applying U.S.S.G. 2A3.1(b)(2). The evidence that one of the victims was only thirteen when appellants recruited her to the United States is overwhelming. The evidence

7

that the second victim was between the ages of twelve and sixteen is less overwhelming but not insubstantial.

## B.  U.S.S.G. 2A3.1(b)(3)

The district court did not misinterpret or misapply the Custody, Care and Supervisory Enhancement under U.S.S.G. 2A3.1(b)(3).  *See United States v. Swank*, 676 F.3d 919, 922-24 (9th Cir. 2012).

## C.  U.S.S.G. 3A1.1(b)(1)

The court did not err in finding the victims were unusually vulnerable under U.S.S.G. 3A1.1(b)(1).  Whether victims are unusually vulnerable is a factual finding reviewed for clear error.  *United States v. Veerapol*, 312 F.3d 1128, 1131-32 (9th Cir. 2002).  The district court found at sentencing that the victims were predominantly poor, uneducated, far from home and without connections in the United States, unable to speak English, and unwilling to go to the police for fear of deportation.  While the legislative findings of the Trafficking Victim Protection Act, which includes § 1591, recognizes transnational trafficking as a problem and notes that victims are often vulnerable, nothing suggests that the typical victim reaches the level of vulnerability of the victims in this case.  22 U.S.C. § 7101.

## D. U.S.S.G. 3A1.3

The district court did not err in finding Appellants physically restrained the victims under U.S.S.G. 3A1.3.  The application notes to 3A1.3 define "physical

restraint" by reference to U.S.S.G. 1B1.1 cmt. 1(K), which lists keeping victims under lock as an example of physical restraint. The record is replete with examples of appellants keeping the victims under lock.

## E. U.S.S.G. 3C1.1

The district court did not err in applying the obstruction of justice enhancement, U.S.S.G. 3C1.1, to Gladys, Mirna, Maria, and Gabriel. The court erred in applying the enhancement to Maribel, but the error was harmless. The only evidence that Maribel obstructed justice involved her threats to victims to keep them from going to the police before the investigation began. Maribel's threats all took place prior November 1, 2006, when the amendments to 3C1.1 became effective. The government's argument that Maribel's conspiracy charge continued through December 2006 is unavailing because the enhancement applied to Maribel's § 1591 conviction. *United States v. Castro*, 972 F.2d 1107, 1112 (9th Cir. 1992) (overruled on other grounds in *United States v. Jimenez Recio*, 537 U.S. 270 (2003)). This error, however, is harmless because it does not affect Maribel's final guidelines range. *United States v. Cruz-Gramajo*, 570 F.3d 1162, 1174 (9th Cir. 2009).

## F. Maria's Use of Force or Fear

We construe Maria's appeal to include an appeal of the district court's application of U.S.S.G. 2A3.1(b)(1), the guideline for forcible sex conduct.

However, Maria offers no argument in support of this part of her appeal. In any event, the district court did not err for the record contains evidence of numerous instances of Maria using force or fear.

## G. U.S.S.G. 3B1.1

The district court did not err in finding that Gladys was a leader or organizer of an extensive scheme under U.S.S.G. 3B1.1. There were over twenty participants in Appellants' conspiracy, far more than the five required for the four-level enhancement. The record makes clear that Gladys directed or gave orders to many of these participants.

## H. U.S.S.G. 3B1.2(b)

The district court did not err in applying U.S.S.G. 3B1.2(b) to Maribel. Her argument again relies on a misunderstanding of 28 U.S.C. § 1591(a). A defendant's role is not minor simply because she was not directly involved in the transportation of a victim across international boundaries. A violation of § 1591(a) can take place completely within the bounds of a single state. Transportation is not even a required element of § 1591(a), but one of several possible ways to fulfill the first element, assuming knowledge. The fact that Maribel did not personally recruit or transport the victims across the U.S. border does not make her role minor.

## I. U.S.S.G. 3E1.1(a)

The district court did not plainly err in failing to find that Gladys accepted responsibility under U.S.S.G. 3E1.1(a).  Gladys did not request from the district court a reduction for acceptance of responsibility at trial.  She argues on appeal that because she would have accepted a "package deal" plea agreement had her co-defendants agreed to accept it, she should receive the sentencing benefit of accepting responsibility.  In cases where a defendant wanted to plead guilty but was unable to do so for some reason, the court should evaluate whether he or she expressed genuine contrition.  *United States v. Johnson*, 956 F.2d 894, 904-05, *opinion supplemented on denial of reh'g sub nom. United States v. Emelio*, 969 F.2d 849 (9th Cir. 1992); *United States v. McKinney*, 15 F.3d 849, 852 (9th Cir. 1994).  Gladys expressed little or no genuine contrition.  Given that she did not request the reduction, we decline to hold that the district court plainly erred. In any event, any error would be harmless because Glady's guidelines range would not change.

## J.  Substantive Reasonableness

The district court's sentences were substantively reasonable.  After considering each of the § 3553(a) factors, including any mitigating evidence submitted by the defendants and length of sentences given nationwide for § 1591 violations, the court sentenced each defendant to a below-guidelines sentence.  A

well-reasoned, below-guidelines sentence normally is reasonable, *United States v. Bendtzen*, 542 F.3d 722, 729 (9th Cir. 2008), and this case is no exception.

## K. Ex Post Facto Error

The district court did not violate the ex post facto clause by applying the amended version of § 1591(a) to Maria. Congress amended 28 U.S.C. § 1591 in July 2006, adding a fifteen-year mandatory minimum. The jury found Maria guilty of a § 1591(a) charge on the indictment dating from February 2006 to December 2006. Several witnesses at trial described Maria's conduct during the fall of 2006 that clearly fulfills the elements of § 1591.

## V. Conclusion

For the reasons above, we affirm the convictions and sentences of the district court.

**AFFIRMED.**