13-2722 (L)
*United States of America v. Antonio Rivera, et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————

August Term, 2014

(Argued: January 26, 2015     Decided: August 25, 2015)

Docket Nos. 13-2722 (L); 13-2723 (Con); 13-2864 (Con)

————————

UNITED STATES OF AMERICA,

*Appellee,*

-v.-

ANTONIO RIVERA, AKA SANTOS MORALES, AKA ANTONIO
ALMADAMO, AKA SANTOS GARCIA, JASON VILLAMAN, AKA SANTI,
JOHN WHALEY, AKA JOHN HOLLY, AKA JOHNNY,

*Defendants-Appellants.[*]*

————————

Before:
        JACOBS, CALABRESI, AND WESLEY, *Circuit Judges*.

————————

—————————————

[*] The Clerk of the Court is directed to amend the caption of this case as set forth above.

Appellants Antonio Rivera, Jason Villaman, and John Whaley appeal from judgments entered on June 27, 2013, in the United States District Court for the Eastern District of New York (Feuerstein, J.). Appellants were convicted, after a jury trial, of sex trafficking, forced labor, and alien harboring and transportation charges. We hold that the exclusion of evidence of the victims' other sexual behavior before they were employed at the Appellants' bars and any other exposure to a sexualized business did not violate the Appellants' right to present a complete defense and to confront witnesses. We also hold that while the sex trafficking charge given to the jury was error, that error was harmless. Finally, we hold that the Appellants' sentences were procedurally unreasonable. We therefore AFFIRM Appellants' convictions, VACATE their sentences, and REMAND the cases for a full resentencing. Judge JACOBS dissents in a separate opinion.

> JOHN F. CARMAN, Garden City, NY, *for Defendant-Appellant Antonio Rivera*.
>
> JONATHAN I. EDELSTEIN, Edelstein & Grossman, New York, NY, *for Defendant-Appellant Jason Villaman*.
>
> ELIZABETH A. LATIF (Daniel E. Wenner, *on the brief*), Day Pitney LLP, Hartford, CT, *for Defendant-Appellant John Whaley*.
>
> AMY BUSA, Assistant United States Attorney (Jo Ann Navickas, Assistant United States Attorney, *on the brief*), *for* Kelly T. Currie, Acting United States Attorney for the Eastern District of New York, Brooklyn, NY.
>
> _____

WESLEY, *Circuit Judge*:

Appellants Antonio Rivera, Jason Villaman, and John Whaley appeal from judgments entered on June 27, 2013, in the United States District Court for the

Eastern District of New York (Feuerstein, J.). Appellants operated two bars on Long Island that also functioned as illegal brothels. They advertised a decent salary and free transportation to and from work to recruit attractive, undocumented aliens to work in a role they described as "waitress." The "waitresses," who became the victims in Appellants' scheme, were told they would be expected to dress suggestively, serve drinks, and possibly dance with customers. The reality was very different: Appellants threatened the victims with violence and deportation if they spoke to the authorities or quit, forced them to drink alcohol until they were intoxicated, required them to strip, and compelled them to be fondled by customers, to be groped by customers, and to have sex with customers.

Before trial, the Government moved *in limine* to, among other things, preclude Appellants from inquiring or offering evidence as to "the victims' other sexual behavior including . . . any other employment in a sexualized business" under Federal Rule of Evidence 412. Gov't Mot. in Lim., Apr. 12, 2011, Dist. Ct. Dkt. No. 139, at 2. Whaley, joined by Villaman,[1] opposed this branch of the

---

[1] Rivera did not object to the Government's *in limine* motion to preclude cross-examination about the victims' other employment in a sexualized business. On appeal, Rivera contends that evidence of the victims' sexual past should have been admissible.

3

motion, arguing that "[i]nformation which shows that the alleged victims engaged in commercialized or similar sex without force, fraud or coercion goes to the heart of the question of guilt or innocence in this case." Villaman App. 147. The district court, after argument, precluded testimony about the victims' employment in other sexualized businesses.

Whaley also objected to the Government's proposed jury instruction on the sex trafficking charge, arguing that the jury should not be instructed that it could consider any aspects of the victims' backgrounds since the defense was precluded from questioning victims about their prior life experiences. The district court overruled Whaley's objection.[2]

We review Rivera's argument for plain error. *See* Fed. R. Crim. P. 52(b); *Jones v. United States*, 527 U.S. 373, 388 (1999).

[2] The jury charge on sex trafficking ultimately read:

> The scheme, plan or pattern need not involve actual threats of serious harm, but may involve any other means, including deception or psychological coercion, used to cause the person to reasonably believe that she, her family, or any other person would suffer serious harm if she refused to continue providing sex acts. . . . If you find that any of the three prohibited means [force, fraud or coercion] I mentioned earlier was used, you must then determine whether such use was sufficient to cause one or more of the Jane Does . . . to engage in a commercial sex act. In making that determination, you may consider the cumulative effect of the conduct of that defendant and the Jane Does. You may also consider the special vulnerabilities, if any, of the Jane Does. In this regard you may find that not all persons are of the same courage or firmness. You may consider, for

4

At trial, Appellants' counsel elicited testimony that could suggest that the victims consented to being prostitutes. For example, some of the victims testified that they had quit working at the bars but then returned after some time for various reasons. A few of the victims acknowledged that they knew others who worked at the bars and had visited the bars prior to their employment there, or had even recruited relatives or friends to work at the bars.

Appellants' counsel made use of this testimony at closing. For example, Rivera's counsel argued that the victims "had the chance to see the[] bars for what they were before they started working," including viewing "non-stop debauchery." Villaman App. 765. He also contended that the victims chose to be prostitutes at the bars because they "would make a lot [more] money . . . than

example, the Jane Doe's background, physical and mental condition, experience, education, socioeconomic status, and any inequalities between them and the defendant under consideration with respect to these considerations including their relative stations in life among other things.

Simply put, you may ask whether the particular Jane Doe was vulnerable in some way so that the actions of the defendant under consideration, even if not sufficient to compel another person to engage in a commercial sex act, were enough to compel that particular Jane Doe. . . .

If a particular Jane Doe was threatened with or suffered certain consequences in connection with the services that she purportedly rendered that overcame her will and compelled her service, that is sufficient to establish the third element of the offense of sex trafficking.

Villaman App. 796.

5

they could make in a factory, or in a nail salon, or in any of the other places that they worked at illegally prior to working at [the bars]." *Id.* Rivera's counsel asked the jury "what woman would come for a job interview, observe this, and then work there unless she knew what she was getting into and how much money she was going to make to do it?" *Id.*

Appellants were convicted of sex trafficking, forced labor, and alien harboring and transportation charges. We address Appellants' arguments that the district court erred: (1) in granting the Government's motion *in limine* to exclude cross-examination regarding the victims' other employment in a sexualized business with respect to Appellants' sex trafficking and forced labor charges; (2) in giving the sex trafficking jury charge; and (3) in imposing unreasonable sentences upon them. We hold first that the exclusion of evidence of the victims' other sexual behavior did not violate the Appellants' right to present a complete defense and to confront witnesses. We next hold that while the sex trafficking jury charge was error, that error, given the evidence in this case, was harmless. Finally, we hold that the sentences imposed were procedurally unreasonable, and a full resentencing is warranted.

**DISCUSSION**

Although we generally review evidentiary rulings for abuse of discretion, *Manley v. AmBase Corp.*, 337 F.3d 237, 247 (2d Cir. 2003), we review interpretations of law *de novo,* including whether an evidentiary ruling violates a defendant's constitutional rights, *see United States v. Tropeano*, 252 F.3d 653, 657 (2d Cir. 2001).

Federal Rule of Evidence 412(a)(1) provides that in a case involving allegations of sexual misconduct, "evidence offered to prove that a victim engaged in other sexual behavior" is inadmissible. The Rule "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details." Fed. R. Evid. 412 advisory committee's note. The exclusion, however, is not absolute. The Rule wisely makes explicit that "evidence whose exclusion would violate the defendant's constitutional rights" should be admitted. Fed. R. Evid. 412(b)(1)(C). The constitutional rights contemplated by this exception include the accused's right under the Sixth Amendment to confront a witness. *See, e.g., Olden v. Kentucky*, 488 U.S. 227, 231 (1988). This includes "a meaningful opportunity to present a complete defense" at trial, *Holmes v. South Carolina*, 547

U.S. 319, 324 (2006) (internal quotation marks omitted), and to confront witnesses, including by "impeach[ing] the credibility of a prosecution witness by cross-examination," *Davis v. Alaska*, 415 U.S. 308, 309 (1974).

Appellants contend that they were improperly precluded from cross-examining the victims about their prior work in the sex industry. Because the sex trafficking and forced labor statutes both require an analysis of "all the surrounding circumstances," *see* 18 U.S.C. §§ 1589(c)(2), 1591(e)(4), Appellants argue that a victim's "experience in the sex industry, and knowledge of its practices, is . . . relevant to whether she was coerced or whether, on the other hand, she *knew precisely what she was getting into* and accepted it as part of a money-making endeavor." Villaman Br. 27 (emphasis added).[3] Appellants contend that, by excluding inquiry on this subject, the district court prevented them from conducting a full cross-examination, thereby violating their rights under the Confrontation Clause. We disagree.

---

[3] Villaman also argues that Rule 412 is inapplicable to the forced labor counts. But the "labor" the victims were forced to provide was, in part, prostitution, and some of the means by which Appellants compelled the victims' forced labor was through sexual assault and the threat of sexual assault. Thus, this was a "criminal proceeding involving alleged sexual misconduct." Fed. R. Evid. 412(a).

Evidence of victims' prior acts of commercial sex is irrelevant to whether those victims were *coerced into* working as prostitutes. Appellants wanted to cross-examine the testifying victims about prior work as prostitutes before Appellants hired them to work in their bars. Appellants hoped to suggest that having already worked as prostitutes, the victims would not have been deceived by Appellants and that they "knew . . . what [they were] getting into." Villaman Br. 27. But knowing that suggestive behavior or even sexual acts might become a part of the job does not mean that the victims therefore consented to being threatened or coerced into performing sexual acts they did not wish to perform. The very purpose of the Rule is to preclude defendants from arguing that because the victim previously consented to have sex—for love or money—her claims of coercion should not be believed.

The Government did *not* assert that the victims had not been engaged in sexualized business before they worked at the bars. The focus of the Government's case was that the victims were forced to perform sex acts against their will. Prior sexual conduct for money or pleasure was irrelevant to whether the victims' sexual activities at the bars were the result of coercion. *See United States v. Roy*, 781 F.3d 416, 420 (8th Cir. 2015) (excluding evidence of victim's

prior prostitution as irrelevant to defendant's charged conduct of sex trafficking); *United States v. Valenzuela*, 495 F. App'x 817, 819–20 (9th Cir. 2012) ("Appellants cannot show the relevance of questions about prior prostitution to either Appellants' knowledge of the use of force, fraud, or coercion, or the victims' consent to work in prostitution."); *United States v. Cephus*, 684 F.3d 703, 708 (7th Cir. 2012) ("[Defendants] wanted to suggest that having already been a prostitute she would not have been deceived by [Defendant] and therefore her testimony that she was coerced into working for him—an element of one of the charged offenses when the prostitute is not a minor, 18 U.S.C. § 1591(a)—should be disbelieved. But the testimony sought to be elicited by the cross-examination would have been irrelevant. Even if no promises were made to [the victim], this would not be evidence that she consented to be beaten and to receive no share of the fees paid by the johns she serviced."). That some of the victims may have been prostitutes before working at the bars does not suggest that Appellants did not later threaten them with violence or deportation in order to coerce them into commercial sex. Thus, there was no relevant use of the cross-examination testimony sought by Appellants and the district court did not err in precluding it.[4]

---

[4] Unlike in *Olden*, 488 U.S. at 232–33, and *Alvarez v. Ercole*, 763 F.3d 223, 230 (2d Cir.

Even without pursuing the precluded line of inquiry, Appellants effectively cross-examined the victims and argued that they engaged in prostitution for pecuniary reasons—not because they were forced. The testimony that some of the victims quit working and subsequently returned or chose to work at the bars because they earned more money than they would at their next-best employment option could have been received by the jury as suggesting consent. Thus, the testimony elicited by Appellants' counsel, as emphasized by Rivera's counsel in closing, allowed Appellants to contend that the victims freely consented to engage in prostitution. *See United States v. Zayac*, 765 F.3d 112, 118–19 (2d Cir. 2014), *cert. denied*, 83 U.S.L.W. 3727 (U.S. June 22, 2015) (No. 14-1069) (any error precluding evidence defendant claimed would bolster his defense of fearing co-conspirator was harmless since defendant's fear was admitted through other testimony). Because Appellants were able to argue that the victims voluntarily engaged in prostitution, the court's exclusion of any evidence concerning the victims' prior engagement in a sexualized business did

2014), the district court here did not curtail all cross-examination as to issues of the victims' credibility or whether they knowingly agreed to engage in prostitution. Rather, Judge Feuerstein imposed a reasonable limitation on a limited aspect of cross-examination. *See Watson v. Greene*, 640 F.3d 501, 510–12 (2d Cir. 2011).

11

not prejudice Appellants with respect to their sex trafficking or forced labor charges.

Appellants also argue that the district court erred in instructing the jury on the sex trafficking charges because the court's definition of "coercion" incorrectly eliminated reference to whether a "reasonable person" in the victims' circumstances would also feel coerced. We review challenges to jury instructions *de novo* but "will reverse only where the charge, viewed as a whole, demonstrates prejudicial error." *United States v. Coppola*, 671 F.3d 220, 247 (2d Cir. 2012). "Where jury instructions omit an element of the charged crime, we review the error for harmlessness beyond a reasonable doubt." *Id.* at 248. An error in the charge is harmless if the verdict "would surely not have been different absent the constitutional error." *Sullivan v. Louisiana*, 508 U.S. 275, 280 (1993) (emphasis omitted).

The district court's instruction did provide that the coercion must make the victim "*reasonably believe* that she . . . would suffer serious harm if she refused to continue providing sex acts." Villaman App. 796 (emphasis added). However, the instruction then focused on "the particular Jane Doe" and did not charge that the Government must prove that a reasonable person of the same

12

background and circumstances would have also felt coerced. The correct standard is a hybrid: it permits the jury to consider the particular vulnerabilities of a person in the victim's position but also requires that her acquiescence be objectively reasonable under the circumstances. *See* 2-47A Modern Federal Jury Instructions—Criminal P 47A.03, Instruction 47A-21. We find that this error was harmless beyond a reasonable doubt; the threats of harm to the victims were sufficiently serious to cause both the victims and reasonable people of the same background and in the same circumstances to feel coerced.[5] Victims testified that Appellants threatened that they would report the victims to the immigration authorities and that they were threatened with or subjected to physical violence if they did not comply with Appellants' instructions. There was significant evidence at trial that several victims were either forcibly raped by Appellants or rendered so inebriated—often by force or threat of force—as to be functionally unconscious. In light of this evidence, a reasonable person with the same background and circumstances as the victims would have felt coerced and the

---

[5] Although the district court erred in instructing the jury on the sex trafficking counts, it properly instructed the jury on the reasonable person standard in its instructions on the forced labor charges.

13

verdict "would surely not have been different absent the" district court's error in the sex trafficking instruction. *See Sullivan*, 508 U.S. at 280 (emphasis omitted).

Finally, Appellants challenge the sentences imposed for both procedural and substantive unreasonableness. We review such challenges applying a "deferential abuse-of-discretion standard." *United States v. DeSilva*, 613 F.3d 352, 356 (2d Cir. 2010) (per curiam) (internal quotation marks omitted). To satisfy procedural review, a trial court may not impose a sentence greater than the statutory maximum, must "begin all sentencing proceedings by correctly calculating the applicable Guidelines range," *United States v. Dorvee*, 616 F.3d 174, 180 (2d Cir. 2010), and should make clear the basis for any enhancements imposed, *United States v. Ahders*, 622 F.3d 115, 119 (2d Cir. 2010). If we determine that a sentence is procedurally unsound, we need not consider whether it was also substantively reasonable. *United States v. Corsey*, 723 F.3d 366, 377 (2d Cir. 2013).

The Government concedes that certain of the sentences imposed exceeded the statutory maximum and thus constitute procedural error warranting remand as to those sentences. Gov't Br. 162. However, there were additional procedural errors in the sentencing proceeding, including an incorrectly imposed mandatory

minimum, and a full resentencing is warranted. *Cf. United States v. Maldonado*, 996 F.2d 598, 599 (2d Cir. 1993) (per curiam) ("[W]hen a sentence has been vacated, the defendant is placed in the same position as if he had never been sentenced.").

First, the district court erred in imposing a two-level "serious injury" enhancement for every victim under U.S.S.G. § 2A3.1(b)(4). The Presentence Report explicitly premised this enhancement on evidence that the victims were raped, and the Government relied on this evidence in defending the application of the enhancement over Appellants' objection. Rivera App. 714–15. However, the application notes to the Guideline advise that "for purposes of this guideline, 'serious bodily injury' means conduct *other than criminal sexual abuse, which already is taken into account in the base offense level*." U.S.S.G. § 2A3.1(b)(4) application note 1 (emphasis added). Serious bodily injury is otherwise defined as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." *Id.* § 1B1.1 application note 1(L). On remand, the district court should consider whether the record supports application of this enhancement as to any victim.

Next, the district court erred in applying an across-the-board four-level enhancement for an offense that involved aggravated sexual abuse as defined by 18 U.S.C. § 2241.[6] The Government concedes that the district court "did not describe in detail the facts of aggravated sexual abuse involving each and every victim" but argues that "there was significant evidence at the trial that several victims were either forcibly raped by defendants or rendered so inebriated— often by force or threat of force—as to be functionally 'unconscious.'" Gov't Br. 155–56. However, the district court was required to "fully state[] the reasons for the sentence imposed," *United States v. Bonilla*, 618 F.3d 102, 111 (2d Cir. 2010), and to make clear the basis for imposing the enhancement, *Ahders*, 622 F.3d at 123 (remanding for "further consideration and explanation of the sentence," including a four-level enhancement). Its failure to do so requires remand. Because we vacate Appellants' sentences and remand for a full resentencing, we

---

[6] That statute criminalizes "knowingly caus[ing] another person to engage in a sexual act" by (1) using force or (2) threatening or placing that person in fear that any person will be subjected to death, serious bodily injury, or kidnapping. 18 U.S.C. § 2241(a). It also criminalizes acts of sexual abuse committed by: (1) rendering another person unconscious, (2) "administer[ing] to another person by force or threat of force, or without the knowledge or permission of that person, a drug, intoxicant, or other similar substance and thereby (A) substantially impair[ing] the ability of that other person to appraise or control conduct; and (B) engag[ing] in a sexual act with that other person." *Id.* § 2241(b).

16

decline to reach their arguments that the sentences imposed were substantively unreasonable. *See Corsey*, 723 F.3d at 377–78.

We close with a few words about the views of our dissenting colleague. The dissent presses for reversal of Appellants' convictions based on the district court's Rule 412 *in limine* decision.[7] The evidence the district court excluded was that prior to their involvement with Appellants, the "victims engaged in commercialized or similar sex without force, fraud or coercion." Villaman App. 147. But the dissenter's concern seems to be that Rivera and his co-defendants were denied their constitutional right to present a defense because evidence that a victim worked in a "sexualized environment"—defined broadly by the dissenter to include such nonsexual activities as "bartending, pole-dancing, and bouncing"—could be used to infer that the victims knew that their "waitress" job descriptions included prostitution. Dissenting Op., *post*, at 3. Appellants never argued this. But Rivera's brief does lay out the core of his concern: "The central issue in the case was coercion: whether the women voluntarily engaged in commercial sexual acts, or whether they were *forced* to do so by the Defendants." Rivera Br. 47. As discussed above, that evidence was not relevant under Rule

---

[7] Our colleague fails to point out that Rivera never objected to the government's motion.

17

412 to whether those victims were later coerced into working as prostitutes. Thus, it would seem that the dissenter's concerns are grounded in neither the evidence defendants sought to offer nor the arguments they have made.

The dissent expresses a concern that "precluding cross-examination of the victims about work as prostitutes prior to their employ by defendants prevented defendants from advancing their main defense: that the victims were not defrauded into engaging in a commercial sex act, an element of the offense." Dissenting Op., *post*, at 6. The district court's ruling on Rule 412 did not prevent Appellants from using this defense. In fact, as discussed above, Rivera's counsel made reference in his closing to the victims' testimony that they had quit working at the bars but later returned, that they had visited the bars prior to their employment, or had recruited relatives or friends to work at the bars.

Lastly, we agree with our dissenting colleague that the sex trafficking charge was in error but clearly that error was harmless. The dissenter counters that "[a] properly instructed jury might find it implausible that the operator of such a[n illegal] business would contact the authorities for any reason: a chop shop does not call the police to report a supplier as a car thief." Dissenting Op., *post*, at 15. The analogy takes the perspective of the person in the power position.

It ignores the victim's view of the world; the consequences of discovery to the out-of-status individual may be so grave that any risk of discovery by immigration officials justified co-operation.

The dissent's harmless error analysis also ignores the plain facts of this case. Defendants knew of the immigration status of the victims and used that knowledge to craft their threats to coerce the victims to perform sexual acts against their will. Knowledge of "objective conditions that make the victim especially vulnerable (such as youth or immigration status) bear on whether the employee's labor was obtained by forbidden means." *United States v. Bradley*, 390 F.3d 145, 153 (1st Cir. 2004) (internal quotation marks and alteration omitted), *vacated on other grounds*, 545 U.S. 1101 (2005) (*Booker* remand). Moreover, the dissent ignores the substantial evidence of coercion through force as noted above. The threatened and actual abuse, *in toto*, was serious enough to cause reasonable people of the same background and in the same circumstances to feel coerced.

## CONCLUSION

We have considered the remaining arguments presented by Appellants and find them to be without merit. For the reasons stated above, the judgments

of conviction are AFFIRMED, the Appellants' sentences are VACATED, and the

cases are REMANDED for a full resentencing.

JACOBS, Circuit Judge, dissenting:

I respectfully dissent.

Defendants Antonio Rivera, Jason Villaman, and John Whaley (along with Rivera's sister, Jasmin, who cooperated and testified for the government) recruited young, poor, undocumented women to work in two bars owned by Rivera, where they had sex with customers who got them dangerously inebriated. Defendants transported these women to and from the bars, abused, and sexually assaulted them. The government argued that defendants ensnared the victims of their sex-trafficking, alien-harboring, and alien-transporting scheme by deceiving them about the nature of their employment, withholding their pay, threatening them with deportation, telling them that the police worked for Rivera and would not assist them, and, generally, creating a climate of fear. Defendants were convicted of (variously) multiple counts of committing conspiracies to commit sex-trafficking by means of force, fraud or coercion; forced labor conspiracy; and transporting and harboring aliens; and substantive counts of these offenses.

Such conduct would violate a host of state laws; but the federal offense of sex-trafficking requires the government to show that the acts were accomplished by certain means, and the means relied on at trial were fraud and threats. The

prosecution's case was that the women were recruited on the false pretense that they would work as respectable waitresses--well paid, and well taken care of; and that they instead were mistreated, exploited, and made to feel that they were not free to leave Rivera's employ. There was enough evidence to convict defendants of these despicable offenses in a fair trial, and I would vote to affirm if they had gotten one.

The district court granted the government's <u>in limine</u> motion to "preclude evidence of the victims' other sexual behavior both pre- and post-employment at the bars, and any other employment in a sexualized business, outside of the occasions pertaining to this case where the defendants forced the victims to engage in prostitution and other forced sexual contact." D. Ct. Dkt. No. 231 at 2. The government argued, and the majority agrees, that this evidence was "inadmissible under Fed. R. Evid. 412, which protects victims of sex crimes, and is irrelevant under Fed. R. Evid. 401, 402 and 403." <u>Id.</u>

There were two trial errors; neither of them was harmless, and each reinforced the tendency of the other to prevent a fair trial on the critical issue of whether the women were defrauded and coerced.

First, the court excluded evidence that the victims worked as prostitutes

prior to their employment by defendants as well as evidence of prior

employment in a sexualized business.  Evidence of work in a sexualized business

was excluded on no ground I can think of: there are many jobs in a sexualized

environment–-such as bartending, pole-dancing, bouncing, etc.--that are

categorically *not* sexual behavior.  Exclusion of prior work in prostitution does

implicate Rule 412; but the outer boundary of Rule 412 stops short of violating

the Confrontation and Due Process Clauses.  Because the central issues at

defendants' trial were fraud and coercion, the blanket exclusion of relevant

evidence under Rule 412 deprived defendants of their constitutional rights to

confront witnesses and to a fair trial.  See infra Points I and II.

Second, the court's sex-trafficking charge allowed the jury to decide guilt

solely on the basis of the subjective feelings of the women, whereas a proper

instruction would have required consideration as well of whether a reasonable

person in their position would have felt coerced or been misled and defrauded.

See infra Point III.

The instructional error compounds the evidentiary error, and the two leave

me with real questions about the fairness of this trial.  See United States v.

Haynes, 729 F.3d 178, 197 (2d Cir. 2013) (vacating judgment of conviction and

remanding because multiple errors, considered together, "call into serious doubt whether the defendant received the due process guarantee of fundamental fairness to which she and all criminal defendants are entitled"). See infra Point IV.

Because the Confrontation Clause violation and the instructional error rendered defendants' trial fundamentally unfair, a new trial as to all counts is warranted. See Spencer v. Texas, 385 U.S. 554, 563-64 (1967) ("[T]he Due Process Clause guarantees the fundamental elements of fairness in a criminal trial."); cf. United States v. Bruno, 383 F.3d 65, 91 (2d Cir. 2004) (recognizing spillover effect that warranted vacatur of counts other than those primarily infected with error). See infra Point V.

# I

The Constitution guarantees "a meaningful opportunity to present a complete defense" at trial. Holmes v. South Carolina, 547 U.S. 319, 324 (2006). "Whether the exclusion of [evidence] violate[s] [a defendant's] right to present a defense depends upon whether 'the omitted evidence[,] evaluated in the context of the entire record[,] creates a reasonable doubt that did not otherwise exist.'"

Justice v. Hoke, 90 F.3d 43, 47 (2d Cir. 1996) (quoting United States v. Agurs, 427 U.S. 97, 112 (1976)).

Federal Rule of Evidence 412 bars the introduction of evidence of a victim's "sexual behavior" and "sexual predisposition." Fed. R. Evid. 412(a)(1), (2). In a criminal case, however, the rule yields if the exclusion of evidence would violate the defendant's constitutional rights. Id. at (b)(1)(C). Rule 412 is intended to "safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process." Fed. R. Evid. 412 advisory committee note to 1994 amendment. In that way, the rule "encourage[s] victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders." Id.

"Restrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence may not be arbitrary or disproportionate to the purposes they are designed to serve." Michigan v. Lucas, 500 U.S. 145, 151 (1991) (internal quotation marks omitted). To that end, the Supreme Court limited a state rape-shield law when it impinged upon a defendant's Confrontation Clause right. Olden v. Kentucky, 488 U.S. 227, 231-32 (1988) (finding constitutional

5

violation in a case where the central issue was consent and the court excluded evidence "from which jurors . . . could appropriately draw inferences relating to the reliability of the witnesses" and from which "a reasonable jury might have received a significantly different impression of the witness' credibility" (internal alterations and quotation marks omitted)).

In this commercial sex-trafficking case, Rule 412 furnishes no basis for precluding evidence of exposure to a sexualized business; as defendants put it, "[f]raud in the inducement was a running theme" of the prosecution. Defs.' Ltr., dated Feb. 3, 2015, at 3. Moreover, precluding cross-examination of the victims about work as prostitutes prior to their employ by defendants prevented defendants from advancing their main defense: that the victims were not defrauded into engaging in a commercial sex act, an element of the offense under 18 U.S.C. § 1591(a). Cf. Alvarez v. Ercole, 763 F.3d 223, 232 (2d Cir. 2014) (affirming grant of habeas relief when trial court's rulings "precluded [the defendant] from fleshing out his main defense theory").

Rule 412 does not bar the introduction of evidence in "circumstances in which the probative value . . . significantly outweighs possible harm to the victim." Fed. R. Evid. 412 advisory committee notes to 1994 amendment. Here,

6

in light of the charges and the government's theory of its case, the excluded evidence was highly probative: if credited, it would have been a full defense to the sex-trafficking theories advanced by the prosecution. Cf. United States v. Elbert, 561 F.3d 771, 777 (8th Cir. 2009) (rejecting defendant's Rule 412 argument in a commercial sex-trafficking case "[b]ecause the victims were minors and could not legally consent" and therefore "the government did not need to prove the elements of fraud, force, or coercion, which are required for adult victims").

## II

At the pre-trial conference in which the court heard the in limine motion, the judge asked the government a telling question: "[do] you think that if someone went from one situation into an identical situation, that might be relevant"? VA 155. The government argued that it was not: "Our theory is that work in a sexualized business is not relevant to this trial unless it's . . . working in the bars Antonio Rivera owned. . . . It is just as likely that the victim . . . was abused by another bar owner." Id. The court initially recognized that this case was distinguishable from one involving a "personal one-on-one [i.e., intimate] relationship," id. at 156, and indicated that it would "take [the evidence] as it

7

comes"; but the court later granted the government's <u>in limine</u> motion by a simple endorsement of the government's motion. <u>Id.</u> at 152.

On appeal, the government maintains (and the majority accepts) that the excluded evidence is *irrelevant* to whether the victims were *coerced* into working as prostitutes by Rivera, Villaman and Whaley. Maj. Op. at 9. If the evidence were truly irrelevant, the protections of Rule 412 would not even be implicated; the evidence would simply be inadmissible under Federal Rule of Evidence 401. And it is of course "intolerable to suggest that because [a] victim [was] a prostitute, she automatically is assumed to have consented with anyone at any time." <u>United States v. Saunders</u>, 943 F.3d 388, 392 (4th Cir. 1991). But defendants did not seek to cross-examine the victims about their prior employments in order to suggest consent to specific sexual encounters. Rather, the excluded evidence was relevant to whether their employment in the commercial sex trade was procured by fraud or coercion, as the government was required to show under 18 U.S.C. § 1591. A reasonable juror could conclude that prior, voluntary work in the industry suggested that the employment arrangement here was consensual and not entered into by fraud.

Relevance, however, is not the decisive issue here. In order to warrant

8

relief, the exclusion of the evidence must have "violate[d] the defendant[s']"

constitutional rights." Fed. R. Evid. 412(b)(1)(C). I conclude that it did. See

Davis v. Alaska, 415 U.S. 308, 315 (1974) ("Confrontation means more than being

allowed to confront the witness physically.").

It is hard to see how defendants could have put on a "complete defense,"

Holmes v. S. Carolina, 547 U.S. 319, 324 (2006), without evidence of the victims'

prior employment in a sexualized business. That is because (under the

government's theory and the court's charge) the jury was invited and directed to

decide the critical issues of fraud and coercion from the wholly subjective point

of view of the victims, and in light of their backgrounds and special

vulnerabilities.[1] Cf. United States v. Alvarez, 601 F. App'x 16, 19 (2d Cir. 2015)

(summary order) ("Here, the district court admitted evidence of the victims'

history of prostitution *prior* to their meeting Alvarez. In that way, Alvarez was

---

[1] The majority considers that defense counsels' effort to marshal arguments *in closing* mitigated the erroneous grant of the motion in limine. See Maj. Op. at 18. But the Confrontation Clause is "designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination," Pennsylvania v. Ritchie, 480 U.S. 39, 52 (1987), and here "the reliability of the evidence against [defendants was not] subject[ed] . . . to rigorous testing," Lilly v. Virginia, 527 U.S. 116, 123-24 (1999). And of course, as the jury was instructed, the arguments of counsel are *not* evidence. See United States v. Suarez, 588 F.2d 352, 355 (2d Cir. 1978).

9

able to present a complete defense and to impeach the government's witnesses using the admitted evidence of the victims' earlier prostitution. The excluded evidence of the victims' later prostitution was not critical to protect Alvarez's constitutional rights.").

Everything turned on the government's ability to convince the jury that the victims were deceived, and "a reasonable jury might have received a significantly different impression of the witness' credibility" if defendants had been permitted to establish that the victims previously worked in sexualized environments. Olden, 488 U.S. at 231-32 (internal alterations and quotation marks omitted); cf. United States v. Shellef, 507 F.3d 82, 107 (2d Cir. 2007) ("Where a jury is presented with multiple theories of conviction, one of which was invalid, the jury's verdict must be overturned if it is impossible to tell which theory formed the basis for conviction." (internal quotation marks omitted)). As defendants argued here and before the district court, see VA 147, evidence of prior work in a sexualized environment goes to the heart of their defense. See United States v. Forrester, 60 F.3d 52, 64-65 (2d Cir. 1995) ("Error going to the heart of a critical issue is less likely to be harmless." (internal quotation marks omitted)).

Here, the government emphasized to the jury that the victims expected to

work as respectable, well looked after waitresses.  <u>See</u> VA 755 (arguing in summation that defendants "all agreed to tell the girls that they would just be waitresses to entice them"); <u>id.</u> at 756 ("[Defendants] . . . decided to lie to the girls about what the job was, because if they knew the truth of the sex act they would never agree in the first place.  They lied about the work, they lied about the money.  They lied about the girls' safety.  And that is fraud."); <u>see also</u> Defs.' Ltr. at 3.  In other words, the government's theory was that the victims accepted employment with defendants and then "engage[d] in [the] commercial sex act[s]" that formed the basis for defendants' prosecution only because of defendants "fraud."  18 U.S.C. § 1591(a).  But the precluded line of inquiry--the victims' prior places of employment and exposure to sexualized environments (as well as prior work as prostitutes)--bears directly on whether they were *defrauded* within the meaning of 18 U.S.C. § 1591(a); that is, whether they understood the terms and circumstances of their employment.  <u>Cf.</u> <u>United States v. Valenzuela</u>, 2008 WL 2824958, at *3 (C.D. Cal. July 21, 2008) (recognizing that if the government introduced evidence "tending to show that the victims . . . did not expect to engage in prostitution . . . it will have put those victims' sexual histories at issue" and, "[u]nder those circumstances, it is possible that . . . evidence rebutting the

11

government's allegations might be admissible under the constitutional exception").

The government argues that notwithstanding the grant of its in limine motion, the defense "had ample evidence in the record to argue, as it did, that the testifying waitresses consented to engaging in prostitution." Gov't Br. at 107. In rejecting defendants' Confrontation Clause argument, the majority rehearses some of this evidence. See Maj. Op. at 5-6. True, defense counsel endeavored to show the jury that the waitresses' employment was consensual and that they were not deceived, but "[w]e cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it." Davis, 415 U.S. at 317.

### III

As the majority concludes, the district court erred by delivering a wholly subjective sex-trafficking charge instead of a charge that reflected the proper hybrid standard. See Maj. Op. at 12-13. I part company with the majority because I am not at all persuaded that omission of the objective aspect of the statutory consideration was harmless beyond a reasonable doubt.

The jury charge greatly lightened the government's burden. It is one thing (and hard) to convince a jury that a reasonable person, with the same background as the victim and in the same circumstances as the victim, would have felt coerced or defrauded. Cf. United States v. Campbell, 764 F.3d 880, 888 (8th Cir. 2014) ("The jury could find his actions amounted to coercion if the assaults were part of a pattern intended to cause a person to believe that failure to perform an act [of prostitution] would result in serious harm. *In doing so, the jury was required to assess how a reasonable person . . . in the same circumstances . . . would perceive [the defendant's] conduct*." (internal quotation marks and citations omitted and emphasis added)); United States v. Fields, 2013 WL 5278499, at *1 (M.D. Fla. Sept. 18, 2013) (finding harm "sufficiently serious, under all the surrounding circumstances, to compel a *reasonable person* of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm" (internal quotation marks omitted and emphasis added)); United States v. Jaensch, 678 F. Supp. 2d 421, 432 & n.6 (E.D. Va. 2010) (referencing use of "reasonable person" standard in "defining

13

critical elements" of the forced labor statute).[2]

It is of course much easier to establish coercion or fraud subjectively, based on the victims' own testimony. The jury was instructed by the district court that it could convict if the *specific* Jane Does testified that they felt coerced regardless of whether a reasonable person in similar circumstances with a similar background would have felt coerced. The question posed was whether the actions of defendants, "even if not sufficient to compel another person to engage in a commercial sex act, were enough to compel *that particular Jane Doe*." The jury was further instructed: "If a *particular Jane Doe* was threatened with or suffered certain consequences in connection with the services she . . . rendered that overcame her will and compelled her service, that is sufficient." RA 522-25 (emphasis added). Pressing its advantage, the government stressed the "specific vulnerabilities" of the victims, and argued that defendants "tailored their coercive scheme to [the] witness[es]' specific vulnerabilities." VA 756.

---

[2] Other courts have invoked this objective aspect of the standard in evaluating challenges to sex-trafficking convictions. See, e.g., United States v. Bell, 761 F.3d 900, 908 (8th Cir. 2014) ("Bell coerced these women into performing commercial sex acts. He threatened both their physical and psychological well-being should they leave or implicate him to police. *A reasonable person in this situation* likely would have found his threats of harm credible . . . ." (emphasis added)); United States v. Mack, 298 F.R.D. 349, 354 n.5 (N.D. Ohio 2014).

14

The reduced burden of proving such *subjective* coercion or fraud becomes lighter than air if the defense cannot elicit evidence that the victims' employment and experiences let them know in advance what they were getting into.

It therefore matters whether a *reasonable person* would have found the threats of harm credible. The main threat was that defendants would inform immigration authorities that the victims were present illegally, and arrange to have them deported. A properly instructed jury might find it implausible that the operator of such a business would contact the authorities for any reason: a chop shop does not call the police to report a supplier as a car thief. And a properly instructed jury might have concluded that the threat of deportation to one's home country would be nothing compared to a form of prostitution tantamount to serial rape. In any event, the objective reasonableness of the victims' perception of the consequences of going to the police is a question that should not have been taken from the jury.

We are advisedly reluctant to find harmlessness when we cannot be assured of the impact of the instructional error. See United States v. Kaiser, 609 F.3d 556, 567 (2d Cir. 2010) ("[T]here is a reasonable probability that the jury convicted Kaiser on a conscious avoidance theory and that the jury would not

15

have done so but for the instructional error."); <u>United States v. Chas. Pfizer & Co.</u>, 426 F.2d 32, 40-41 (2d Cir. 1970) ("The charge not only did not focus the jury's attention on [a necessary aspect of the government's case] but may well have led to a contrary view on their part" and "there can be no assurance that the jury was not misled to defendants' serious prejudice."). I cannot conclude with any degree of assurance that the erroneous instruction given here was harmless.

**IV**

The Rule 412 and instructional errors reinforced and compounded each other. <u>See</u> <u>Chambers v. Mississippi</u>, 410 U.S. 284, 302 (1973) (concluding "exclusion of . . . critical evidence, coupled with the State's refusal to permit [the defendant] to cross-examine [a key witness], denied [the defendant] a trial in accord with traditional and fundamental standards of due process"). The government emphasized the specific vulnerabilities of the victims while the court precluded defendants from cross-examining the victims about their specific backgrounds. These errors, considered together, "call into serious doubt whether the defendant received the due process guarantee of fundamental fairness to which . . . all criminal defendants are entitled." <u>Haynes</u>, 729 F.3d at 197.

16

**V**

The limitation on defendants' ability to cross-examine the testifying victims, and the erroneous jury charge on sex-trafficking, had ramifications for the entire trial and cast doubt on the fairness of the verdicts rendered as to all charges. The evidentiary error undermined defendants' ability to subject the government's theory of the case to "rigorous testing in the context of an adversary proceeding before the trier of fact." Lilly v. Virginia, 527 U.S. 116, 123-24 (1999). The jury instruction given allowed for a conviction if the jury credited the victims' testimony that they subjectively believed they were coerced and defrauded. A new trial is therefore warranted as to all counts of conviction. See United States v. Al-Moayad, 545 F.3d 139, 178 (2d Cir. 2008) (concluding cumulative effect of trial court's errors denied defendants due process of law and fundamentally fair trial (citing cases)); cf. Chambers, 410 U.S. at 295 ("[D]enial or significant diminution [of the confrontation right] calls into question the ultimate integrity of the fact-finding process . . . ." (internal quotation marks omitted)).

\* \* \*

Defendants' convictions should be vacated, and the case remanded for a

17

new trial free from the evidentiary and instructional errors that undermined the fairness of this trial.  I respectfully dissent.